**E & B ENTERPRISES, d/b/a Fine Arts Theatre, Plaintiff,**

v.

**CITY OF UNIVERSITY PARK, Roy C. Coffee, Jr., Joel T. Williams, Jr., Fred N. Peek and other persons whose names are presently unknown, Defendants.**

**Civ. A. No. CA–3–77–0807–D.**

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 9, 1977.

Neal E. Young, Dallas, Tex., for plaintiff.

Dick P. Wood, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Plaintiff by this suit challenges the constitutionality of Zoning Ordinances Nos. 300 and 301 of the City of University Park, Texas, adopted March 24, 1977. The jurisdiction of this court was properly invoked.

Plaintiff's complaint contains several counts, and damages as well as equitable relief are sought therein. No evidence as to damages was introduced at trial, however, and Plaintiff has not pursued this claim. Moreover, the antitrust count was not argued or briefed, and has effectively been abandoned by Plaintiff. Plaintiff strenuously maintains, however, that the questioned ordinances are unconstitutional and should be declared so by this court. The court agrees.

Defendants' trial brief indicates the strong reliance Defendants place on *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). In *Young* the Supreme Court upheld a Detroit ordinance that treated "adult" theaters differently from other theaters, by requiring that adult theaters not be located at certain locations in Detroit. The purpose was to inhibit the concentration of certain disfavored "uses" so as to protect the integrity of Detroit neighborhoods.

*Young*, however, is a carefully limited exception to the general rule that the First Amendment strictly limits government attempts to shield the public from some kinds of speech on the ground that they are more offensive than others. See *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125, 131 (1975). The Detroit ordinance did not greatly restrict access to or suppress protected speech, as it affected only the locations of new theaters and as there were many possible locations for such theaters. The Detroit ordinance also was hinged on an *emphasis* on certain prohibited sexual activities and anatomical areas, and thus was not broadly prohibitive of clearly protected speech. And, the Detroit ordinance was passed to aid the preservation of Detroit's neighborhoods, an interest the Supreme Court considered significant, and was based upon receipt of testimony on the deleterious effect on those neighborhoods of the concentration of the restricted "uses."

The situation in the case at bar is completely different. No studies of the effect on University Park neighborhoods of the presence of the Fine Arts Theatre, in fact no studies of any kind, have been made. Moreover, it was stipulated and/or admitted at trial that: (1) there are no signs of deterioration of any University Park neighborhoods, even those immediately adjacent to the theater; (2) there is no evidence of transients being attracted to the area of the Fine Arts Theatre; and (3) there is no evidence that minors have been improperly admitted to the theater, and no evidence that Plaintiff has been anything but responsible in the display of its promotional posters and marquee lettering. These kinds of problems, it is clear, had no effect on the

passing of the Ordinances; no evidence existed as to *actual* neighborhood deterioration. Rather, the background to the passing of the Ordinances clearly demonstrates that it was the objection of certain members of the community to the *content* of the films shown at the Fine Arts Theatre that prompted the passage of the Ordinances.

Even were there some legitimate University Park interest in the *prospective* effect of the theater on city neighborhoods, the Ordinances do not meet the strictly delimited *Young* requirements. The Ordinances are greatly restrictive of protected speech. They apply to an existing theater (the Fine Arts Theatre is one of only two theaters in University Park and the only "adult-fare" theater), and in effect require it to change the type of films it shows or move out of University Park; it was clearly shown at trial that there are only two areas of the city in which the prohibited-type films can be shown, one owned by the city and the other already occupied commercially.

■ Moreover, the definition of prohibited material is strikingly broad, and does not comport with *Young* requirements. One brief showing, one glimpse of a bare breast or buttock allows the City Engineer to revoke a theater's license. If this does not trench too broadly on protected speech, and impose prior restraints, nothing does.

Thus the *Young* neighborhood preservation justification, as carefully limited by the Supreme Court, does not justify the Ordinances passed by University Park. Where the effect on free speech is not significant the neighborhood preservation rationale, when factually supported, may legitimate discriminations based upon the content of speech. But when, as here, the neighborhood preservation justification is a mere mask to cover an attempt to run out of town a theater whose fare some citizens do not approve, the effect on speech is highly significant and the courts are required to act.

The city presents another justification, the protection of minors, which was not pressed at trial but which is contained in the "whereases" of the Ordinances. This justification will not stand up in light of the *Erznoznik* discussion of the subject. *Erznoznik, supra,* 422 U.S. at 211, 95 S.Ct. at 2273, 45 L.Ed.2d at 132–134. As mentioned above, too, the testimony at trial was clear that Plaintiff has been more than responsible in its exterior displays, and has scrupulously observed the rules prohibiting admission of minors.

■ Absent any constitutionally legitimate justification, the restriction on speech the Ordinances constitute must be condemned. The Fifth Circuit has recently reached this result in a similar case. *Bayou Landing, Ltd. v. Watts,* 563 F.2d 1172 (5th Cir., 1977). What University Park in essence has done is make a community legislative determination, to be enforced by the City Engineer, that certain speech is objectionable and is not to be allowed in University Park. The obvious overbreadth of the speech prohibited, the absence of rigorous *judicial* safeguards, and the prior restraints imposed on presumably protected speech are clearly improper. *Id.* The Ordinances violate the equal protection clause and the First Amendment, on their face and as applied to Plaintiff in light of the stipulated facts and the evidence adduced at trial.

Accordingly, Defendants should be enjoined from enforcing the Ordinances against Plaintiff, and the Ordinances should be declared unconstitutional and void and of no effect as applied to Plaintiff.

Counsel for Plaintiff is directed to prepare and submit to the court an appropriate form of judgment, approved as to form by counsel for Defendants. Costs of this action are to be taxed against Defendants.

It is so ORDERED.