Frank GENUSA, Individually and d/b/a Swinger's Playmate, New Directions, Inc., an Illinois Corporation, d/b/a Swinger's World and Downtown News, William T. Thompson, Joyce Evans, Burnell Davis, Pam Gannon, Barbara Mattern, and Linda Coleman, Plaintiffs,

v.

CITY OF PEORIA, a Municipal Corporation, James Baken, Individually and as City Manager, Richard Carver, Individually and as Mayor of Peoria, Allen Andress, Individually, and as Superintendent of the Police Department of Peoria, Noel Hart, Individually and as Fire Commissioner of Peoria, Gary Sandburg, Individually and as Commissioner of the Department of Inspections of Peoria, Neil E. Goodenough, Individually, and as Superintendent of the Planning Department of Peoria, Mildred Arends, Individually and as City Treasurer of Peoria, Defendants.

No. P–CIV–79–1045.

United States District Court,
C. D. Illinois,
Peoria Division.

May 11, 1979.
As Corrected by Order of May 30, 1979.

Adam D. Bourgeois, Chicago, Ill., for plaintiffs.

Henry E. Mueller, Asst. Corp. Counsel, Peoria, Ill., for defendants.

## ORDER

ACKERMAN, District Judge.

Plaintiffs, owners and employees of several adult book stores in the City of Peoria, have filed this action seeking declaratory and injunctive relief based on the alleged unconstitutionality of an ordinance commonly known as the Peoria Adult Use Ordinance. On March 9, 1979, I entered a temporary restraining order preventing arrest of any of the named plaintiffs based on the licensing portions of the Adult Use Ordinance pending hearing on the motion for preliminary injunction. The parties have submitted legal memoranda and orally argued the motion for preliminary injunction at a hearing on March 22, 1979. No evidence was introduced at the hearing. The parties have represented that there are no facts in dispute and that the essential legal issues are presently before this Court.

The ordinance in question purports to regulate certain "Adult Businesses" which "because of their very nature are recognized as having serious, objectional, operational characteristics." In response to this problem the City has attempted to prevent the concentration of adult businesses and restrict their location.[1] The ordinance es-

---

1. A copy of the ordinance is attached to this opinion as an appendix. Reference to sections of the ordinance will be made by citing the particular section number, for example, § 4–45.

tablishes zoning restrictions (§ 4–45) and requires licenses for the adult businesses (§ 4–47) and permits for each individual employee who works in an adult business (§ 4–53). There is no question raised that the individual and business plaintiffs fall within the ordinance's definition of Adult Book Stores or are employees of Adult Book Stores.

The attacks raised by plaintiffs in this case are directed only to the constitutionality of the zoning and licensing provisions of the Adult Use Ordinance which regulate the owners and employees of adult book stores. None of the other provisions of the ordinance are at issue and this opinion is not dispositive of the legality of the ordinance as it affects any of the other adult businesses.

A preliminary issue which must be considered is whether plaintiffs have standing to challenge the constitutionality of the Adult Use Ordinance. As stated in Wright, Miller and Cooper, Federal Practice and Procedure § 3531, at 176:

> Standing requirements have been developed and maintained both as doctrines of constitutional limitation, drawn from the "case or controversy" definition of the federal judicial power in Article III, and as discretionary doctrines aimed at prudently managing judicial review of the legality of public acts.

The Article III limitation requires that a litigant establish "injury in fact" resulting from the challenged activity. Where the statute may constitutionally be applied to an individual or is inapplicable to him, the plaintiff will not ordinarily be heard to challenge the statute on the ground that it may conceivably be applied unconstitutionally to others. However, an exception has been carved out in the area of the First Amendment.

■ The Supreme Court has altered its traditional rules of standing to permit, in the First Amendment area, attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. "Litigants, therefore, are permitted to challenge the statute not because their own rights of free expression are violated, but because of the judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). *See also Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). In order to have standing an individual must present more than allegations of a subjective "chill". There must be a "claim of specific objective harm or a threat of specific future harm." *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972).

It appears that several of the business plaintiffs have applied for and received an Adult Use License and defendant contends that the remaining employee plaintiffs would be eligible for an Adult Use Employee Permit if they would apply. Defendant also points out that since the business plaintiffs were apparently in existence prior to the ordinance's effective date, the zoning provisions will not apply to them while they remain in their present location (§ 4–45). There has been no evidence to reveal any actions taken by the City against any of the plaintiffs regarding either the zoning or licensing requirements.

■ Plaintiffs here, unlike those in *Laird,* are presently and prospectively subject to the regulations that they are challenging. In the First Amendment area the ability to restrict one's communicative freedoms in order to comply with an allegedly vague and overbroad ordinance cannot serve as a barrier to prevent judicial review of the constitutionality of the ordinance. Given the possible restrictions and sanctions available under the ordinance and the serious economic interests which may be involved, plaintiffs have at least claimed sufficient "injury in fact" to sustain their right to challenge.

The plaintiffs have ably presented and developed certain legal attacks. There

must be no doubt that the regulation of book stores and employees thereof, as opposed to regulation of some of the other adult businesses under the ordinance, may to some degree infringe upon First Amendment constitutional rights. The question becomes whether the infringement arises to a constitutionally impermissible level.

Turning to the specific challenges to the ordinance, they can be categorized into attacks on the zoning provisions applicable to the businesses and separate attacks on the licensing provisions applicable to the businesses and the permit provisions applicable to the individuals.

A starting point in any analysis of the Peoria ordinance must be the United States Supreme Court's opinion in *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). In *American Mini Theatres* there were three principal attacks on a Detroit ordinance nearly identical to portions of the Peoria ordinance. Two adult motion picture theatres sought injunctive and declaratory relief contending: (1) the ordinances were so vague that they violated the Due Process Clause of the Fourteenth Amendment; (2) that they were invalid under the First Amendment as prior restraints on protected communication; and (3) that the classification of theatres on the basis of the content of their exhibitions violated the Equal Protection Clause of the Fourteenth Amendment. In a 5–4 opinion the Court held: (1) the only vagueness present is related to the amount of sexually explicit activity that may be portrayed before the material is "characterized by an emphasis" on such matter and this is readily subject to a narrowing construction by state courts and is an inappropriate case for the court to adjudicate hypothetical claims of persons not before the Court; (2) the ordinances are not invalid under the First Amendment as prior restraints merely because they contain zoning and licensing requirements; and (3) even though the First Amendment protects communication in this area from total suppression, the state may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures.

Justice Powell, in a concurring opinion in *American Mini Theatres* stated:

The inquiry for First Amendment purposes is not concerned with economic import; rather, it looks only to the effect of this ordinance upon freedom of expression. This prompts essentially two inquiries: (i) Does the ordinance impose any content limitation on the creators of adult movies or their ability to make them available to whom they desire, and (ii) does it restrict in any significant way the viewing of these movies by those who desire to see them? On the record in this case, these inquiries must be answered in the negative. At most the import of the ordinance on these interests is incidental and minimal. Detroit has silenced no message, has invoked no censorship, and has imposed no limitation upon those who wish to view them. The ordinance is addressed only to the places at which this type of expression may be presented a restriction which does not interfere with content.

427 U.S. at 78–79, 96 S.Ct. at 2456. Justice Powell went on to find Detroit's ordinance constitutional under the four-part test of *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). Under that test, a governmental regulation is sufficiently justified, despite its incidental impact upon First Amendment interests, "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on . . . First Amendment freedoms is no greater than is essential to the furtherance of that interest."

Both prior to and following the opinion in *American Mini Theatres*, cities have passed ordinances designed to zone, license, or otherwise regulate adult businesses including adult bookstores and adult motion picture theatres. Ordinances in many of those cities have been attacked on much the same

bases as those urged here with a very high degree of success. *See, e. g., Bayou Landing, Ltd. v. Watts,* 563 F.2d 1172 (5th Cir. 1977) (licensing and/or purported zoning of bookstores); *Natco Threatres, Inc. v. Ratner,* 463 F.Supp. 1124 (S.D.N.Y.1979) (licensing of motion pictures); *Bayside Enterprises, Inc. v. Carson,* 450 F.Supp. 696 (M.D. Fla.1978) (zoning and licensing of adult businesses including bookstores and theatres); *E&B Enterprises v. City of University Park,* 449 F.Supp. 695 (N.D.Tex.1977) (zoning of adult theatres); *McCright v. Olson,* 367 F.Supp. 937 (D.N.D.1973) (licensing of motion pictures); *Peto v. Cook,* 364 F.Supp. 1 (S.D.Ohio 1973) (licensing of various forms of entertainment and sale of certain printed matter); *Plematis v. City of Daytona Beach, Florida,* 340 F.Supp. 617 (N.D.Fla.1972) (licensing of book stores); *Oregon Bookmark Corp. v. Schrunk,* 321 F.Supp. 639 (D.Ore.1970) (licensing of magazine and bookstores). With the legal analysis of these prior decisions in mind, I will now address each of the alleged constitutional infirmities of the Peoria ordinance.

### Zoning Provisions

■ Plaintiffs contend that the Detroit zoning ordinance upheld in *American Mini Threatres* was justified by the unique history that city has had with adult businesses and that Peoria has failed to establish such an interest. This argument was upheld in *E&B Enterprises v. City of University Park,* 449 F.Supp. 695, 697 (N.D.Texas 1977) where the court found:

Where the effect on free speech is not significant the neighborhood preservation rationale, when factually supported, may [make] legitimate discriminations based upon the content of speech. But when, as here, the neighborhood preservation justification is a mere mask to cover an attempt to run out of town a theater whose fare some citizens do not approve, the effect on speech is highly significant and the courts are required to act.

There has been no evidence presented either to support or deny the existence in Peoria of actual neighborhood deterioration.

All that exists are the "whereas" clauses of the ordinance which finds that adult businesses have serious, objectional, operational characteristics and the City desires to prevent their concentration and location in order to prevent continued erosion of the character of the affected neighborhoods and protect the youth of the community. However, I do not feel that a unique history or specific finding of past deterioration is prerequisite to a valid zoning provision under *American Mini Theatres.* The City's interest in the prospective effect of these businesses on the integrity of neighborhoods may provide the legitimate governmental interest assuming all of the other requirements of *American Mini Theatres* are satisfied. *See* page 1203 *supra.*

It was the other requirements which required striking down the zoning requirements in *Bayside Enterprises, Inc. v. Carson,* 450 F.Supp. 696 (M.D.Fla.1978). There the Court found that the effect of the ordinance was to suppress or greatly restrict access to lawful speech. Other than the businesses presently in existence (who were grandfathered in), the distance requirements of the Jacksonville, Florida zoning plan virtually precluded access to the market in adult materials. One critical element of *American Mini Threatre* was that there was no denial of access to adult entertainment by either seller or buyer. Under the circumstances the Jacksonville zoning scheme was found to have more than minimal or incidental effect upon First Amendment interests and was therefore unjustified.

■ A review of the distance requirements of the Peoria Ordinance (§ 4–45), shows that it does not deny access to the market for adult materials. Based upon the reasons set forth in the "whereas" clauses, these zoning provisions are directed only at restricting the location of adult businesses and any restriction upon First Amendment rights are minimal or incidental. Thus, the portions of the ordinance dealing with zoning, *i. e.* §§ 4–45 A, B, C, 4–46, are upheld. (§ 4–45(D) may present

separate questions not now before this Court. *See, California v. LaRue*, 409 U.S. 109 (1972) and *Peto v. Cook*, 364 F.Supp. 1 (S.D.Ohio 1973)).

*Licensing and Permit Provisions*

The licensing provisions must stand or fall on their own. Under § 4–47 each adult business must obtain an Adult Business License. After receiving the $100 filing fee (§ 4–47) and application as set forth in § 4–48, and reviewing the inspections referred to in § 4–47, the city manager shall issue a license unless he finds one of the conditions set forth in § 4–49. Under certain circumstances (§ 4–50) he can suspend or revoke the license. A written notice of the charges must be given prior to revocation or suspension by at least 10 days to allow an opportunity for a public hearing before the city manager.

All persons, including the licensee, who engage in providing goods and services to the public in connection with an adult use must obtain an Adult Use Employee Permit (§ 4–53). A filing fee of $25 is required for an original application and a $10 for a renewal. The city manager reviews the application and may issue a permit unless he finds one of the conditions set forth in § 4–49. Under certain circumstances he can revoke or suspend the permit (§ 4–54). The city manager must give the employee written notice specifying the grounds and the employee may, within 10 days of the revocation or suspension, file a written notice for a public hearing before the City Manager.

■■ One initial thrust by plaintiff is that any form of licensing as to areas of adult entertainment which are protected by the First Amendment (e. g., adult bookstores) is an unconstitutional prior restraint. Although systems of prior restraint are not unconstitutional per se, *e. g., Southeastern Promotions, Ltd., v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975), they are said to bear a "heavy presumption" against their constitutional validity. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). As stated

in *American Mini Theatres*, 427 U.S. at 63, 96 S.Ct. at 2448: "The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not sufficient reason for invalidating these ordinances."

■ . Reasonable regulations of the time, place and manner of protected speech, where those regulations are necessary to further significant governmental interests, are permitted by the First Amendment. *See, e. g., Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); *Liberman v. Schesventer*, 447 F.Supp. 1355 (M.D.Fla.1978). The essential questions become (1) what the legitimate governmental interest is in requiring these licenses or permits; (2) whether the governmental interest is unrelated to the suppression of expression; and (3) whether the regulations at issue here are unnecessarily restrictive for the purpose they are designed to serve, or suffer any other constitutional impediment.

■ The ordinance itself is devoid of any independent governmental interest in the licensing and permit system apart from those related to neighborhood preservation. In *American Mini Theatres* the majority found that the record disclosed a factual basis for the city's conclusion that the restriction of these particular businesses will help preserve the character of the neighborhoods. While the factual basis is not so clear on this record, I have found that Peoria's interest in neighborhood preservation does justify certain restrictions on book stores falling within the "adult" definition (§ 4–43A). In my opinion the business license requirement is permissible, but only to the extent it is directed at assuring the health, safety and welfare of the adult book store employees and the general public.

■ The neighborhood preservation interest is a legitimate concern of the City of Peoria and is unrelated to the suppression

of free expression. Other than the conclusory allegations contained in the complaint of an ulterior motive of the City to harass and intimidate the bookstore owners and employees and put plaintiffs out of business, there is no evidence to support such an intent or motive. But regardless of the absence of any evil motive or interest to deprive plaintiffs of any constitutional rights, the ordinance may still be unconstitutional in several regards because the effect is to suppress free expression.·

■ Plaintiffs attack several specific aspects of the business licensing act. One attack is that the discretionary power vested in the city manager is unconstitutional. As stated in *Staub v. City of Baxley*, 355 U.S. 313 at 322, 78 S.Ct. 277 at 282, 2 L.Ed.2d 302, an ordinance that

> makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

Many federal cases support the proposition that in order to violate this principle, a law need not on its face vest with a licensing official absolute discretion; if the articulated standards for the official to apply are vague or general, the spectre of censorship may exist just as clearly as where there are no standards at all. *See, e. g., Bayside Enterprises, Inc., v. Carson*, 450 F.Supp. 696, 706 (M.D.Ky.1978) and cases cited therein. In *Bayside Enterprises, Inc.*, the Court found:

> the effect of the Code's "good moral character" criterion is to allow the Sheriff to deny a license to whomever he pleases and to legitimatize that action through reference to a criterion which is so imprecise as to be virtually unreviewable. Accordingly, the Court hereby finds this particular provision unconstitutional.

In *Grandco Corp. v. Rochford*, 536 F.2d 197 (7th Cir. 1976), the Court of Appeals for this Circuit found:

The state may subject the exercise of First Amendment freedoms to the prior restraint of a license requirement, but only where it provides "narrow, objective, and definite standards to guide the licensing authority." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). Section 101–5, in providing that the mayor *may* issue a license upon a *satisfactory* showing that the applicant is a *fit and proper* person, fails to provide the required standards. We agree with the district court's conclusion that "as written with regard to movie theatres, this section of the ordinance gives the mayor such broad discretion to deny a license application that it acts as an unconstitutional prior restraint upon the enjoyment and exercise of· First Amendment freedoms."

In this case the city manager is given authority under § 4–49 to refuse an applicant an Adult Use License or Adult Use Employee Permit if he finds, inter alia:

(b) The applicant is a person who is not of good moral character and reputation in the community in which he or she resides.

(c) The applicant has been convicted of the following offenses, unless upon investigation the City Manager finds that such convictions occurred at least four (4) years prior to the date of the application, that the applicant has had no subsequent convictions and has shown evidence of rehabilitation sufficient to warrant the public trust:

(1) A felony under federal laws or the laws of this or any other state,

(2) Prostitution, soliciting for a prostitute, pandering, keeping a place of prostitution, patronizing a prostitute, pimping, obscenity, selling harmful material or having a tie in the sale of obscene publications to distributors, under the laws of this state or equivalent laws or ordinances of the United States or any other state or city, or any other misdemeanor opposed to decency and morality.

These same criteria may be used to suspend or revoke an Adult Use License under § 4–50 or an Adult Use Employee Permit under § 4–54.

■ Vagueness, overbreadth, and prior restraint, in the area of the First Amendment, are difficult and illusory concepts to apply. *See e. g.,* Comment, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844 (1970). In this case, however, the unfettered discretion of the city manager to deny a license on the basis of lack of "good character and reputation," which is undefined in the ordinance, is clearly an unconstitutional prior restraint. Accordingly, § 4–49(b) must be found unconstitutional.

■ Under § 4–49(c) the city manager may allow a license or permit even though the applicant has been convicted of the enumerated offenses if he finds "that such convictions occurred at least four (4) years prior to the date of the applications, that the applicant has had no subsequent convictions and *has* shown evidence of rehabilitation sufficient to warrant the *public trust.*" (Emphasis supplied.) The portion of § 4–49(c) relating to "showing evidence of rehabilitation sufficient to warrant the public trust" must fail constitutional scrutiny for the same reasons as the "good character and reputation" standard in § 4–49(b).

■ The portion of the ordinance (§ 4–49(c)) which allows the city manager to refuse, revoke, or suspend a license or permit based upon conviction of certain crimes, including pornography, raises several different constitutional questions. Under § 4–49(c)(1), the conviction of any felony would prevent an individual from owning or working in an adult bookstore. This criteria does have a clearly definable standard (*i. e.,* conviction record). It cannot be doubted that certain disabilities may be imposed on convicted felons if designed to accomplish a legitimate governmental purpose and is a constitutional exercise of legislative power. Felons have been, for example, prevented from practicing medicine, *Hawker v. New York,* 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898); disqualified from

holding office in labor unions, *United States v. Brown,* 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965); and prevented from carrying firearms, *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). In *Wes Ward Enterprises v. Andrews,* 42 Ill.App.3d 458, 355 N.E.2d 131 (3rd Dist. 1976), a Peoria massage parlor ordinance requiring that licensees must not have been previously convicted of a felony or a sex-related offense was upheld as reasonably related to the legitimate city interest in preventing unscrupulous persons from permitting massage establishments to be used for purposes of prostitution.

■ The City's burden in this case is heavy because it not only restricts plaintiff's fundamental right to engage in a lawful occupation, but the regulations also restrict an occupation which is connected with First Amendment protected activities (*e. g.,* distribution of books) as opposed to unprotected activities such as massage parlors or liquor establishments. The First Amendment of the Constitution protects freedom of speech and of the press which embraces not only the publication of books but also their circulation and distribution. *Lovell v. Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1937); *Plematis v. City of Daytona Beach, Fla.,* 310 F.Supp. 617 (M.D.Fla.1972). While it is not inconceivable that there is some rational relationship between the City's interest in the public health, safety and moral welfare and the attempt to keep those convicted of felonies or sex-related crimes from selling books in an adult bookstore, there is nothing present in the record to support this complete barrier to prevent any felon from owning or working in an adult bookstore. By refusing all felons a license or permit it acts as a complete prior-restraint on their opportunity to work in the distribution of communications. Although even a majority of the community may not agree with the content of these materials, that cannot alone justify preventing people from selling it. A felony conviction has no apparent legitimate relationship to neighborhood preservation through zoning and licensing which is the

purported purpose of this ordinance. Based upon the lack of any apparent justification by the City, the complete ban of anyone convicted of any felony must fall. *See, Natco Theatres, Inc. v. Ratner*, 463 F.Supp. 1124, 1128–1131 (S.D.N.Y.1979); *Perrine v. Municipal Court*, 5 Cal.3d 656, 97 Cal.Rptr. 320, 488 P.2d 648 (1971), *cert. denied*, 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972); *Seattle v. Bittner*, 81 Wash.2d 747, 505 P.2d 126 (1973); *Alexander v. City of St. Paul*, 303 Minn. 201, 227 N.W.2d 370 (1975); and cases cited therein.

Similarly, there is no justification by the City for excluding those convicted of offenses listed in § 4–49(c)(2). The purposes of this ordinance, neighborhood preservation through zoning, bears no reasonable relation to past conduct of the applicants. Furthermore, a system of prior restraint based upon past convictions can only be sustained if it is shown that granting a license to an individual with such record would present clear and present danger of a serious substantive evil. *See, Ratner, Perrine, Seattle* and *Alexander*. The present ordinance does not even approach the narrowness required to withstand constitutional scrutiny.

As brought out by the prior decisions on this issue:

It is impermissible to deny a person the right to exercise a fundamental freedom (by denying a license to operate a First Amendment related business such as a bookstore or movie theatre) solely upon the ground that the person has suffered a prior criminal conviction. In such situations the appropriate remedy is not to inhibit the right to sell a book or exhibit a movie, but rather, where applicable, to prosecute for violation of the obscenity laws. *Ratner* at 1130.

*But see Universal Amusement Co., Inc. v. Vance*, 559 F.2d 1286 (5th Cir. 1977); *106 Forsyth Corp. v. Bishop*, 482 F.2d 280 (5th Cir. 1973); *West Gallery v. Salt Lake City Bd. of Com'rs*, 586 P.2d 429 (Utah 1978); *Ogden City v. Eagle Books, Inc.*, 586 P.2d 436 (Utah 1978), and cases cited therein. I must thus find § 4–49(c)(1) and (c)(2) unconstitutional.

The permit requirements for the individual employees (§ 4–53) must fail *in toto*. Given that denial of a business license is not generally appropriate based on the prior criminal activity or an owner or employee, the employee permit requirement has no utility. Any other motive must be viewed as a misguided attempt to regulate the content of the message they are helping deliver to those who seek it. The City's argument that all of the information is public anyway and it would save the City money to have the employees provide it misses the mark. The burden of infringing on an individual's constitutional rights cannot be justified solely on the basis of economic efficiency.

Both the business and employee plaintiffs object to the requirement that they must reveal certain information on the applications for permits or licenses, including any criminal record, past license revocations, etc. Because of the unique protection given the activities involved here under the First Amendment, I have concluded that the City has failed to justify the use of past conduct as a proper consideration in determining when a license should be granted. For this reason it is unnecessary to any legitimate purpose of the City to require applicants to reveal this information. See *Ratner, supra* at 1131–1133. Since the employee permit requirement has been held unconstitutional, only the business license and its application remains. Consistent with legitimate health, safety and welfare concerns, the City may require an applicant to provide the information set out in § 4–48(a), (b), (i) and (k). The question of what other information, if any, may be legitimately required on an application is not now before this Court.

In summary, I have upheld the Peoria ordinance insofar as it establishes zoning requirements and licenses of an adult business for legitimate health, safety, and welfare purposes. The zoning provisions of § 4–45 A, B, and C, and § 4–46, are permissible measures to effectuate a legitimate city interest of present and future

"neighborhood preservation." Furthermore, the City may, within its home rule powers, require a license as a condition precedent to the operation of an adult bookstore. However, when the city licenses a bookstore, adult or otherwise, it is licensing an activity protected by the First Amendment, and "as a result the power of the city is more limited than when the city licenses activities which do not have First Amendment protection, such as the business of selling liquor or running a massage parlor." *See, Alexander, supra* 227 N.W.2d 373 at 392–93.

Because of these limitations, I have found the present ordinance unconstitutional in several regards. Section 4–49(b) is unconstitutional in that it gives the city manager unfettered discretion to deny a license. Sections (c)(1) and (2) have been held unconstitutional in that they prohibit a person from selling books solely because of his past conduct and that unjustifiably violates the First Amendment prohibition against prior restraints. Since it is improper to deny, revoke, or suspend the bookstore owner's license because of a past abuse, most of the information sought in § 4–48 is unjustifiable. Additionally, § 4–53 and § 4–54 are invalid because they serve no useful or legitimate purpose which justifies governmental infringement on First Amendment rights.

■ It is again reiterated that only the application to adult bookstores and their employees of the zoning and licensing provisions of the Peoria ordinance are before this Court. Even as to adult bookstores there was no need to consider the scope of the definitions in § 4–43; portions of § 4–50 dealing with vicarious responsibility for employees' criminal activities or the due process accorded in a license denial; anything regarding § 4–51, § 4–59, § 4–60, or any other section not specifically mentioned. In view of the severability clause appearing at § 4–61, all of the ordinance except for those portions declared invalid by this opinion will remain in effect.

In arriving at these conclusions the Court has not been unaware of the concerns of the public about the presence of pornography in their communities. However, as well-stated by Justice Maughan in his dissenting opinion in *Ogden City v. Eagle Books, Inc.,* 586 P.2d 436 (Utah 1978):

> The battle against pornography must be waged—and is being waged—on legal plains other than prior restraint. Why? The reasons are not blurred and are compellingly stated, . . . because the law—struggling with many competing interests—has mandated that ". . . a free society prefers to punish the few who abuse the rights of speech *after* they break the law than to throttle them and all others beforehand." [Emphasis in original.]

> The merchants of obscenity gain, of course, monetary profit from their trade. But, they bring no dower of worth to our heritage. Indeed, the fruitage of their trade besmears civilizing achievements and diminishes man's reach for excellence and elevation. However, I believe the law should punish those who peddle the rubbish of pornography *after* adjudication by criminal sanctions and civil action but not *before.* This "law's delay" is, at times, fatiguing and aggravating to most of us but necessary in order to aid in the preservation of that highly vulnerable—but cherished—right enjoyed by only a few societies in all human history—free expression. (Footnotes omitted.)

Plaintiffs having established all of the factors required for a preliminary injunction, such request is allowed. Based upon the parties' representation that all of the facts and argument are before this Court, a permanent injunction following the dictates of this order will also hereby be entered.

## APPENDIX

### AN ORDINANCE AMENDING CHAPTER 4 OF THE PEORIA CITY CODE OF 1957

WHEREAS, adult book stores, cabarets, body shops, massage parlors and adult motion picture theaters, because of their very nature, are recognized as having serious,

 objectional, operational characteristics, particularly when several of them are concentrated in certain areas thereby having a deleterious effect upon adjacent areas; and

WHEREAS, it is necessary that these businesses be regulated in such a manner as to prevent this concentration and the continued erosion of the character of the affected neighborhoods; and

WHEREAS, the City of Peoria desires to protect the youth of its community from the objectional operational characteristics of such businesses by restricting their close proximity to places of worship, schools and residential areas;

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF PEORIA, ILLINOIS:

## ARTICLE V.

## REGULATION OF ADULT BUSINESSES

Sec. 4–43. DEFINITIONS.

For the purpose of this ordinance, the following words and phrases shall have the meanings respectively prescribed to them by this section:

A. *Adult Book Stores*: An establishment having as a substantial portion of its stock in trade, books, magazines, films for sale or viewing on premises by use of motion picture devices or any other coin-operated means, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "Specified Sexual Activities," or "Specified Anatomical Areas" or an establishment with a segment or section devoted to the sale or display of such material.

B. *Adult Motion Picture Theater*: An enclosed building with a capacity of 50 or more persons used regularly and routinely for presenting motion-pictures having as a dominant theme material distinguished or characterized by an emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Specified Anatomical Areas" for observation by patrons therein.

C. *Adult Mini Motion Picture Theater*: An enclosed building with a capacity for less than 50 persons used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Specified Anatomical Areas", for observation by patrons therein.

D. *Adult Entertainment Cabaret*: A public or private establishment which is licensed to serve food and/or alcoholic beverages, which features topless dancers, strippers, male or female impersonators, or similar entertainers.

E. *Body Shop or Model Studio*: Any public or private establishment which describes itself as a body shop or model studio, or where for any form of consideration or gratuity, figure models who display "Specified Anatomical Areas" are provided to be observed, sketched, drawn, painted, sculptured, photographed, or similarly depicted by persons paying such consideration or gratuity, or where for any form of consideration or gratuity, nude and semi-nude dancing, readings, counseling sessions, bodypainting and other activities that present materials distinguished or characterized by an emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Specified Anatomical Areas" are provided for observation by or communication to persons paying such consideration or gratuity.

F. *Massage Establishment*: Any establishment having a fixed place of business where any person, firm, association or corporation engages in, or carries on, or permits to be engaged in or carried on any of the activities mentioned in Sub-Section I of this section.

G. *Specified Sexual Activities*: are any of the following conditions:

1. Human genitals in a state of sexual stimulation or arousal;

2. Acts or representations of acts of human masturbation, sexual intercourse or sodomy, bestiality, oral copulation or flagellation;

3. Fondling or erotic touching of human genitals, pubic region, buttock or female breast.

4. Excretory functions as part of or in connection with any activities set forth in (1) through (3) above.

H. *Specified Anatomical Areas* are any of the following conditions:

1. Less than completely and opaquely covered: (a) human genitals, pubic region, or pubic hair (b) buttock and (c) female breast below a point immediately above the top of the areola; and

2. Human male genitals in a discernibly turgid state, even if completely opaquely covered.

I. *Massage* : Any method of pressure on or friction against or stroking, kneading, rubbing, tapping, pounding, vibrating or stimulating of the external soft parts of the body with the hands or other parts of the human body or with the aid of any mechanical or electrical apparatus or appliance, with or without such supplementary aids as rubbing alcohol, liniments, antiseptics, oils, powder, creams, lotions, ointments or other similar preparations commonly used in this practice.

Sec. 4–44. ADULT USES.

A. Adult Book Store

B. Adult Motion Picture Theater

C. Adult Mini Motion Picture Theater

D. Adult Entertainment Cabaret

E. Massage Establishment

F. Body Shop or Model Studio

Sec. 4–45. LIMITATIONS ON ADULT USES.

Adult uses shall be permitted subject to the following restrictions:

A. An adult use shall not be allowed within five hundred (500) feet of another existing adult use.

B. An adult use shall not be located within seven hundred (700) feet of any zoning district which is zoned for low, (R–1), medium (R–2) or high density (R–3) residential use.

C. An adult use shall not be located within five hundred (500) feet of a pre-existing school or place of worship.

D. An adult use shall not be located in a building structure which contains another business that sells or dispenses in some manner alcoholic beverages.

The provisions stated in this section shall not apply to any adult use in existence at the time this Article takes effect, so long as the adult use continues to conduct its business at the location it was doing business when this Article took effect and does not change the nature of the adult use.

Sec. 4–46. MEASUREMENT OF DISTANCES.

For the purposes of this ordinance, measurements shall be made in a straight line, without regard to intervening structures or objects, from the property line of the adult use to the nearest property line of another adult use, school, place of worship or district zoned for residential use.

Sec. 4–47. LICENSE REQUIRED.

It shall be unlawful for any person to engage in, conduct or carry on, or to permit to be engaged in, conducted or carried on, in or upon any premises in the City of Peoria, the operation of an adult use as herein defined, without first having obtained a separate license for such adult use from the City Manager of the City of Peoria.

Every applicant for a license to maintain, operate or conduct an adult use shall file an application in duplicate under oath with the City Manager upon a form provided by the City Manager and pay a nonrefundable filing fee of One Hundred Dollars ($100.00) to the City Treasurer, who shall issue a receipt which shall be attached to the application filed with the City Manager.

The City Manager shall within five (5) days refer the copies of such application to the Department of Inspections, the Fire Department, the Police Department and the City Planning Department. These departments shall within thirty (30) days inspect the premises proposed to be operated as an adult business establishment or in case of the Police Department, conduct background

▬▬▬▬▬▬ investigation of the applicant and all such departments shall make written recommendations to the City Manager concerning the premises' and the applicant's compliance with the matters coming within the jurisdiction of such departments.

Within ten (10) days of receiving the recommendation of the aforesaid departments, the City Manager shall notify the applicant that his application is granted, denied or held for further investigation. Such additional investigation shall not exceed an additional thirty (30) days unless otherwise agreed to by the applicant. Upon the conclusion of such additional investigation, the City Manager shall advise the applicant in writing whether the application is granted or denied.

Whenever an application is denied or held for further investigation, the City Manager shall advise the applicant in writing of the reasons for such action.

Failure or refusal of the applicant to give any information relevant to the investigation of the application or his or her refusal or failure to appear at any reasonable time and place for examination under oath regarding said application or his or her refusal to submit to or cooperate with any inspection or investigation required by this chapter shall constitute an admission by the applicant that he or she is ineligible for such permit and shall be grounds for denial thereof by the City Manager.

Sec. 4–48. APPLICATION FOR LICENSE.

An applicant for a license including any partner or limited partner of the partnership applicant and any officer or director of the corporate applicant and any stockholder holding more than ten (10) percent of the stock of a corporate applicant, or any other person who is interested directly in the ownership or operation of the business shall furnish the following information under oath:

(a) Name and address, including all aliases.

(b) Written proof that the individual is at least eighteen (18) years of age.

(c) All residential addresses for the past three (3) years.

(d) The applicant's height, weight, color of eyes and hair.

(e) The business, occupation or employment of the applicant for three (3) years immediately preceding the date of the application.

(f) The adult use or similar business license history of the applicant; whether such person, in previously operating in this or any other city or state under license, has had such license revoked or suspended, the reason therefore, and the business activity or occupation subject to such action of suspension or revocation.

(g) All criminal or city ordinance violation convictions, forfeiture of bond and pleadings of nolo contendere on all charges, except minor traffic violations.

(h) Fingerprints and photograph of the applicant.

(i) The exact nature of the adult use to be conducted and the proposed place of business and facilities thereto.

(j) The names and addresses of all persons holding any beneficial interest in the real estate upon which such adult use is to be operated, including but not limited to, contract purchasers or sellers, beneficiaries of land trust or lessees subletting to applicant.

(k) If the premises are leased or being purchased under contract, a copy of such lease or contract shall accompany the application.

(l) A statement by the applicant that he or she is familiar with the provisions of this Article and is in compliance with them.

Sec. 4–49. ISSUANCE OF ADULT USE LICENSE.

Upon receipt of the recommendations of the departments referred to in Sec. 4–47, the City Manager shall issue a license to maintain, operate or conduct an adult use unless he finds:

(a) That the applicant is under age of eighteen (18) years or under any legal disability.

(b) The applicant is a person who is not of good moral character and reputation in the community in which he or she resides.

(c) The applicant has been convicted of any of the following offenses, unless upon investigation the City Manager finds that such convictions occurred at least four (4) years prior to the date of the application, that the applicant has had no subsequent convictions and has shown evidence of rehabilitation sufficient to warrant the public trust:

(1) A felony under federal laws or the laws of this or any other state.

(2) Prostitution, soliciting for a prostitute, pandering, keeping a place of prostitution, patronizing a prostitute, pimping, obscenity, selling harmful material or having a tie in the sale of obscene publications to distributors, under the laws of this state or equivalent laws or ordinances of the United States or any other state or city, or any other crime or misdemeanor opposed to decency and morality.

(d) The applicant has held an interest in a license either under this Article, Article X of Chapter 16 of the Code of the City of Peoria, which regulates massage establishments, or Chapter 3 of the Code of the City of Peoria which regulates alcoholic liquor and has been revoked for cause.

(e) The applicant, at the time of application for renewal of any license issued under this Article, would not be eligible for such license upon a first application.

(f) The operation as proposed by the applicant, if permitted, would not have complied with all applicable laws, including but not limited to building, health, planning, housing, zoning and fire codes of the City of Peoria.

Every adult use license issued pursuant to this Article will terminate at the expiration of one (1) year from the date of its issuance, unless sooner revoked.

### Sec. 4–50. SUSPENSION OR REVOCATION OF LICENSE FOR ADULT USE.

Any license issued for an adult use may be revoked or suspended by the City Manager if the City Manager shall find:

(a) That the license has violated any of the provisions of this Article regulating adult uses.

(b) The licensee has committed any of the offenses listed in Section 4–49(c) of this Article.

(c) The licensee has knowingly furnished false or misleading information or withheld relevant information on any application for any license or permit required by this Article or knowingly caused or suffered another to furnish or withhold such information on his or her behalf.

(d) The licensee has violated Article X of Chapter 16 of the Code of the City of Peoria regulating massage establishments or Chapter 3 of the Code of the City of Peoria regulating alcoholic liquor.

The licensee shall be responsible for the acts of his agents, servants and employees provided, however, that in the case of a first offense by a licensee where the conduct was solely that of an employee, the penalty shall not exceed a suspension of thirty (30) days if the City Manager shall find that the licensee had no actual or constructive knowledge of such violation and could not by the exercise of due diligence have had such actual or constructive knowledge.

The City Manager before revoking or suspending any license shall give the licensee at least ten (10) days written notice of the charges against him or her and the opportunity for a public hearing before the City Manager at which time the licensee may present evidence bearing upon the question. In such cases, the charges shall be specific and in writing.

### Sec. 4–51. EXTERIOR DISPLAY.

No adult use shall be conducted in any manner that permits the observation of any material depicting, describing or relating to

 "Specified Sexual Activities" or "Specified Anatomical Areas" by display, decoration, sign, show window or other opening from any public way or from any property not licensed as an adult use.

### Sec. 4–52. EXISTING ADULT USES.

All existing adult uses at the time of the passage of this ordinance must submit an application for an adult use license within thirty (30) days of the passage and approval of this ordinance.

### Sec. 4–53. ADULT USE EMPLOYEE PERMIT.

Any person, including a licensee, who actually engages in the providing of goods or services to the public in connection with the adult use shall file an application for an adult use employee permit with the City Manager upon a form provided by the City Manager and shall pay a nonrefundable filing fee of twenty-five dollars ($25.00) for an original application and ten dollars ($10.00) for a renewal application to the City Treasurer who shall issue a receipt which shall be attached to the application filed with the City Manager.

The application for an adult use employee permit shall contain substantially the same information as the application for adult use license, except for the names and addresses of the owners of the real estate and any leases or contracts concerning the real estate.

The City Manager may issue an adult use employee permit within twenty-one (21) days following the application, unless he finds that the applicant would not have been eligible for an adult use license under the terms of Section 4–49 of this Article.

Every adult use employee permit issued pursuant to this Article will terminate at the expiration of one (1) year from the date of its issuance, unless sooner revoked.

### Sec. 4–54. REVOCATION OR SUSPENSION OF ADULT USE EMPLOYEE PERMIT.

Any adult use employee permit may be revoked or suspended by the City Manager if the City Manager shall find:

(a) That the permittee has violated any of the provisions of this Article regulating adult uses.

(b) The permittee has knowingly furnished false or misleading information or withheld relevant information on any application for any license or permit required by this Article or knowingly caused or suffered another to furnish or withhold such information on his or her behalf.

Any adult use employee permit shall be revoked by the City Manager if the City Manager shall find that the permittee has committed any of the offenses listed in Section 4–49(c) of this Article.

The City Manager in revoking or suspending an adult use employee permit shall give the permit holder written notice specifying the grounds therefore. Such person may within ten (10) days of such revocation or suspension file a written request with the City Manager for a public hearing before the City Manager at which time the permittee may present evidence bearing upon the question.

The City Manager may in his discretion conduct such hearing concurrently with a hearing pursuant to Section 4–50 for the adult use license, unless it shall appear that such a joint hearing would prejudice the rights of the licensee or the permittee involved.

### Sec. 4–55. DISPLAY OF LICENSE AND PERMIT.

Every licensee shall display a valid license in a conspicuous place within the adult use business so that the same may be readily seen by persons entering the premises.

All persons required under this Article to obtain an adult use employee permit pursuant to this Article must display on request during the hours of operation of said business an identification card provided by the City of Peoria Police Department containing the legal name, and date of birth of the employee.

### Sec. 4–56. REQUIREMENT FOR ANOTHER LICENSE.

Nothing in this Article shall be deemed to be a limit upon or repeal of requirements set forth in Article X of Chapter 16 of the Code of the City of Peoria which regulates Massage Establishments.

### Sec. 4–57. EMPLOYMENT OF EMPLOYEES WITHOUT PERMITS.

It shall be the responsibility of the licensee for the adult use or the employer of any persons purporting to engage in the providing of goods or services to the public in connection with the adult use to ensure that each such person shall first have obtained a valid adult use employee permit pursuant to this Article.

### Sec. 4–58. EMPLOYMENT OF PERSON UNDER AGE OF EIGHTEEN (18) PROHIBITED.

It shall be unlawful for any adult use licensee or his manager or employee to employ in any capacity within the adult business any person who is not at least eighteen (18) years of age.

### Sec. 4–59. ILLEGAL ACTIVITIES ON PREMISES.

No licensee or any officer, associate, member, representative, agent or employee of such licensee shall engage in any activity or conduct or permit any other person to engage in any activity or conduct in or about the licensed premises which is prohibited by any ordinance of the City of Peoria or law of the State of Illinois or the United States.

### Sec. 4–60. INSPECTIONS.

The Police Department shall from time to time and at least twice a year, make an inspection of each adult use establishment granted a license under the provisions of this Article for the purposes of determining that the provisions of this Article are complied with. Such inspections shall be made at reasonable time and in a reasonable manner. It shall be unlawful for any licensee to fail to allow such inspection officer access to the premises or to hinder such officer in any manner.

### Sec. 4–61. SEVERABILITY CLAUSE.

If any section, subsection, subdivision, paragraph, sentence, clause or phrase in this ordinance, or any part thereof, or application thereof to any person, firm, corporation, public agency or circumstance, is for any reason held to be unconstitutional or invalid or ineffective by any court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining portions of this ordinance or any part thereof. It is hereby declared to be the legislative intent of the City Council that this ordinance would have been adopted had such unconstitutional or invalid provision, clause, sentence, paragraph, section, or part thereof not then been included.

### Sec. 4–62. VIOLATION AND PENALTY.

Any person who shall violate any of the provisions of this Article shall be guilty of a misdemeanor. A person who is convicted shall be punished by a fine of not less than one hundred dollars ($100.00) or more than five hundred dollars ($500.00) or by imprisonment for a period not to exceed six (6) months or by both such fine and imprisonment.

*Section 2.* This ordinance shall be in full force and effect from and after its passage, approval and publication according to law.

PASSED BY THE CITY COUNCIL OF THE CITY OF PEORIA, ILLINOIS this _____ day of _____, A.D. 1979.

APPROVED:

_____

Mayor

ATTEST:

_____

City Clerk

EXAMINED AND APPROVED:

_____

Corporation Counsel

1216

CITY OF PEORIA

ADULT BUSINESS LICENSE APPLICATION

APPLICATION FEE $100

## I. ADULT BUSINESS INFORMATION

Name of Business: _____ Phone # _____

State whether business is a: (1) Sole proprietorship, (2) Partnership, (3) Corporation (CIRCLE ONE)

Proposed place of business: _____

Date that adult use has or will be initiated: _____

Nature of adult use: (CIRCLE ONE)

 A. Adult Book Store
 B. Adult Motion Picture Theater
 C. Adult Mini Motion Picture Theater
 D. Adult Entertainment Cabaret
 E. Massage Establishment
 F. Body Shop or Model Studio

## II. APPLICANT INFORMATION

Applicant's Legal Name and Aliases: _____

_____

Residential addresses for the past three (3) years:

_____
_____
_____

Business occupation and employment history for the three (3) years preceding the date of this application.

| Place of Employment | Date | Duties |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

Has applicant previously operated an adult use or similar business in any other city or state under license, or has had such license revoked or suspended? _____

State reason for suspension or revocation, city or state, and the business activity or occupation of applicant (Explain in detail): _____

_____
_____
_____

Social Security # _____ Drivers License # _____

| Height | Weight | Eyes | Hair | Sex | Date of Birth | |
|---|---|---|---|---|---|---|
| | | | | | | |

Criminal Convictions or City Ordinance Violation Convictions for the preceding four (4) years of applicant or licensee. (Check appropriate conviction and complete all information, this section must be completed in full. If more space is needed, use reverse.)

 State/County Date

_____ Felony (kind)
_____ Sexual misconduct with children
_____ Keeping or residing in a house of ill fame, solicitation
 of a lewd or unlawful act, prostitution or pandering
_____ Selling obscene materials

List all pleadings of Nolo Contendere or Forfeiture of Bonds. (Do not list minor traffic violations): _____

---

### III. PARTNER, CORPORATE OFFICER AND STOCKHOLDER INFORMATION. If adult business is a sole proprietorship, omit Section III and proceed to Section IV.

The name and addresses of any partner or limited partner, any officer or director of the corporation and any stockholder holding more than ten (10) percent of the corporate stock must provide the same information as provided by the applicant.

1. Partner, corporate officer, or stockholder. (CIRCLE ONE)
 Legal name and aliases: _____

 Residential addresses for the past three (3) years:
 _____
 _____
 _____

 Business occupation and employment history for the three (3) years preceding the date of this application:

 | Place of Employment | Date | Duties |
 |---|---|---|
 | | | |
 | | | |

Has applicant previously operated an adult use or similar business in any other city or state under license, or has had such license revoked or suspended? _____

State reason for suspension or revocation, city or state, and the business activity or occupation of applicant (Explain in detail): _____
_____
_____
_____

Social Security # _____ Drivers License # _____

| Height | Weight | Eyes | Hair | Sex | Date of Birth |
|---|---|---|---|---|---|
| | | | | | |

Criminal Convictions or City Ordinance Violation Convictions for the preceding four (4) years of applicant or licensee, their agents and employees. (Check appropriate conviction and complete all information, this section must be completed in full. If more space is needed, use reverse.)

 State/County Date
_____ Felony (kind)
_____ Sexual misconduct with children
_____ Keeping or residing in a house of ill fame, solicitation
 of a lewd or unlawful act, prostitution or pandering
_____ Selling obscene materials

List all pleadings of Nolo Contendere or Forfeiture of Bonds. (Do not list minor traffic violations): _____

---

2. Partner, corporate officer or stockholder (CIRCLE ONE)
 Legal name and aliases: _____

 Residential addresses for the past three (3) years:
 _____
 _____
 _____

**1218** 

Business occupation and employment history for the three (3) years preceding the date of this application:

| Place of Employment | Date | Duties |
|---|---|---|
| | | |
| | | |

Has applicant previously operated an adult use or similar business in any other city or state under license, or has had such license revoked or suspended? _____

State reason for suspension or revocation, city or state, and the business activity or occupation of applicant (Explain in detail): _____

_____

_____

Social Security # _____ Drivers License # _____

| Height | Weight | Eyes | Hair | Sex | Date of Birth |
|---|---|---|---|---|---|
| | | | | | |

Criminal Convictions or City Ordinance Violation Convictions for the preceding four (4) years of applicant or licensee, their agents and employees. (Check appropriate conviction and complete all information, this section must be completed in full. If more space is needed, use reverse.)

| | State/County | Date |
|---|---|---|
| _____ Felony (kind) | | |
| _____ Sexual misconduct with children | | |
| _____ Keeping or residing in a house of ill fame, solicitation of a lewd or unlawful act, prostitution or pandering | | |
| _____ Selling obscene materials | | |

List all pleadings of Nolo Contendere or Forfeiture of Bonds. (Do not list minor traffic violations): _____

_____

3. Partner, corporate officer or stockholder. (CIRCLE ONE)
 Legal name and aliases: _____

_____

 Residential addresses for the past three (3) years:

_____

_____

Business occupation and employment history for the three (3) years preceding the date of this application:

| Place of Employment | Date | Duties |
|---|---|---|
| | | |
| | | |

Has applicant previously operated an adult use or similar business in any other city or state under license, or has had such license revoked or suspended? _____

State reason for suspension or revocation, city or state, and the business activity or occupation of applicant (Explain in detail): _____

_____

_____

Social Security # _____ Drivers License # _____

| Height | Weight | Eyes | Hair | Sex | Date of Birth |
|---|---|---|---|---|---|
| | | | | | |

Criminal Convictions or City Ordinance Violation Convictions for the preceding four (4) years of applicant or licensee, their agents and employees. (Check appropriate conviction and complete all information, this section must be completed in full. If more space is needed, use reverse).

State/County Date

_____ Felony (kind)
_____ Sexual misconduct with children
_____ Keeping or residing in a house of ill fame, solicitation
 of a lewd or unlawful act, prostitution or pandering
_____ Selling obscene materials

List all pleadings of Nolo Contendere or Forfeiture of Bonds. (Do not list minor traffic violations): _____

_____

IV. GENERAL INFORMATION
 Legal Name and aliases of Owners of the Premises:

_____

_____

 Residential addresses for the past three (3) years:

_____

_____

 Have any of the employees employed by said applicant been convicted of any of the charges listed above? Yes / No (CIRCLE ONE)

 If yes, state name of employee, type of conviction, date of conviction, state and county in which convicted:

_____

_____

_____

_____

 I hereby agree to operate the above described business in accordance with all regulations and conditions imposed by the laws of the State of Illinois and the laws and ordinances of the City of Peoria. I do hereby further agree that the location of the adult use is not in violation of Chapter 4 of the Peoria City Code of 1957 and that a copy of such ordinance has been given to me at the time I have made this application. I further affirm all information listed on this application is correct and accurate.

_____<br>Signature of applicant

Subscribed and sworn to before me this _____ day of _____,
19 _____.

_____<br>Notary Public

(SEAL)

Fingerprints of Applicant Photograph of Applicant

A copy of Birth Certificate or Other Written Proof of age mst accompany this application.

THIS APPLICATION WILL BE CONSIDERED COMPLETE ONLY WHEN ALL SECTIONS HAVE BEEN COMPLETED IN THEIR ENTIRETY AND WRITTEN PROOF OF AGE, FINGERPRINTS, PHOTOGRAPH, AND RECEIPT OF $100 FEE

PAYMENT ARE ATTACHED. IF THE PREMISES ARE LEASED A COPY OF THE LEASE MUST BE ATTACHED. THIS APPLICATION WILL NOT BE PROCESSED UNLESS ALL NECESSARY INFORMATION IS PROVIDED.

This application should be completed and taken to the License Clerk, Peoria Police Department, 542 SW Adams Street, Peoria, Illinois.

| Original Application – $25.00 |
|---|
| Renewal – 10.00 |

CITY OF PEORIA

ADULT USE EMPLOYEE

PERMIT APPLICATION

Applicant's Name: _____

All Aliases used by Applicant: _____

Present Residential Address: _____

All Residential Addresses for the Past Three (3) Years: _____

_____

_____

_____

Social Security #: _____ Drivers License #: _____

| Height | Weight | Eyes | Hair | Sex | Date of Birth |
|---|---|---|---|---|---|
| | | | | | |

Business Occupation/Employment History: This section is to include the three (3) years immediately preceeding the date of this application.

Place of Employment Date Duties

_____

_____

_____

Criminal Convictions or City Ordinance Violation Convictions for the preceding four (4) years of applicant or licensee. (Check appropriate conviction and complete all information, this section must be completed in full.)

 State/County Date

_____ Felony (kind) _____

_____ Sexual misconduct with children

_____ Keeping or residing in a house of ill fame, solicitation
 of a lewd or unlawful act, prostitution or pandering

_____ Selling obscene materials

_____ Obscenity

_____ City of Peoria Ordinances Regulating Adult Business

_____ City of Peoria Ordinances Regulating Massage Estab-
 lishments

List all Pleadings of Nolo Contendere or Forfeiture of Bonds. (Do not list minor traffic violations):

_____

_____

_____

Has applicant been previously licensed to work in an adult use or similar business in any other city or state? _____

State city and state: _____

Has such license been suspended or revoked? _____

State reason for suspension or revocation: _____

State name and address of the licensed adult business establishment in which you will be employed and its particular use.

_____

Describe your specific duties as an employee of the above business.

_____

I hereby agree to conduct the above described adult business in accordance with all regulations and conditions imposed by the ordinances of the City of Peoria. I hereby affirm all information contained on this application is true, correct and accurate, and any incorrect or untrue statements will result in immediate revocation of the City of Peoria Identification Card for Adult Use Businesses. I also understand changes in any of the information herein provided must be immediately reported and a new application completed.

_____
Signature of Applicant

Subscribed and sworn to before me this _____ day of _____, 19___.

_____
Notary Public

(Seal)

* A copy of Birth Certificate or other written proof of age must accompany this application.

Fingerprints of Applicant Photograph of Applicant

THIS APPLICATION WILL BE CONSIDERED COMPLETE ONLY WHEN ALL SECTIONS HAVE BEEN COMPLETED IN THEIR ENTIRETY AND WRITTEN PROOF OF AGE, FINGERPRINTS, PHOTOGRAPH AND RECEIPT OF $25.00 FEE PAYMENT ARE ATTACHED. THIS APPLICATION WILL NOT BE PROCESSED UNLESS ALL NECESSARY INFORMATION IS PROVIDED.

Permit fee may be paid in City Treasurer's Office, Room 100, City Hall Building, 419 Fulton Street, Peoria, Illinois.