**ELLWEST STEREO THEATERS INCORPORATED OF TEXAS**

v.

**Donald BYRD, Chief of Police of the City of Dallas, Jim F. Everett, Captain in the Dallas Police Department, Vice Division, Raymond H. Hawkins, Lieutenant in the Dallas Police Department, Vice Division, and Richard P. Horn, Lieutenant in the Dallas Police Department, Vice Division.**

No. CA 3–77–1044–C.

United States District Court, N. D. Texas, Dallas Division.

June 8, 1979.

---

Mike Aranson, Dallas, Tex., Arthur M. Schwartz, Neil E. Ayervais, Denver, Colo., for plaintiff.

Lee E. Holt, City Atty., Joseph G. Werner, Kent S. Hofmeister, Asst. City Attys., Dallas, Tex., for defendants.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, District Judge.

Plaintiff has sued to invalidate an Ordinance of the City of Dallas, Texas. That Ordinance is No. 15269 of September 13, 1976, which amended Sections 46–9.2 and

46–9.3 of Chapter 46, "THEATERS," of the Dallas City Code.[1]

Plaintiff sues under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and the Fourteenth Amendment to the Constitution of the United States. In particular, Plaintiff alleges that the City and its agents, the present Defendants, have taken its property without due process of law.[2]

Plaintiff contends that it has been unconstitutionally deprived of its property in that the ordinance does not provide for a "Grandfather" clause exempting pre-existing businesses from its purview. Defendant defends on the merits but also has moved to dismiss based on the case of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

There is little dispute but that this Court has jurisdiction and based upon the allegations of the complaint and the evidence presented to the Court, it concludes that it does have jurisdiction.

■ The Court concludes that it should not abstain under *Younger*. *Younger* requires the Federal Courts to abstain when there is an ongoing criminal proceeding in a State Court in which Plaintiff's contentions may be presented. Beyond a shadow of a doubt, there are myriad cases involving this

---

1. The full text of that Ordinance reads as follows:

An Ordinance amending Section 46–9.2, "Prohibiting exhibition of certain sexually explicit (sic) films in specified areas," and Section 46–9.3, "Measurement of distances," of CHAPTER 46, "THEATERS," of the Dallas City Code, as amended; clarifying the prohibition of certain sexually explicit (sic) films within 1000 feet of a public park adjacent to a district restricted to residential use; providing for the measurement in a straight line of distances between moving picture theaters and moving picture shows and churches, public or private elementary or secondary schools, districts zoned residential, and public parks adjacent to districts zoned residential; providing a penalty not to exceed $200; and providing an effective date.

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF DALLAS:

SECTION 1. That section 46–9.2, "Prohibiting exhibition of certain sexually explicit films in specified areas," of CHAPTER 46, "THEATERS," of the Dallas City Code, as amended, is amended to read as follows:

*"Sec. 46–9.2. Prohibiting exhibition of certain sexually explicit films in specified areas.*

A person commits an offense if he operates or causes to be operated within 1000 feet of a church, public or private elementary or secondary school, district restricted to residential use by the Comprehensive Zoning Ordinance of the city, or (a) public park adjacent to a *district restricted* to residential (areas) *use* a moving picture show or moving picture theater which exhibits a film that explicitly depicts:

(1) contact between any part of the genitals of one person and the genitals, mouth, or anus of another person;

(2) contact between a person's mouth, anus, or genitals and the mouth, anus, or genitals of an animal or fowl;

(3) manipulation of a person's genitals;

(4) defecation; or

(5) urination."

SECTION 2. That Section 46–9.3, "Measurement of distances," of CHAPTER 46, "THEATERS," of the Dallas City Code, as amended, is amended to read as follows:

*"Sec. 46–9.3. Measurement of distances.*

For the purposes of this article, measurements shall be made in a straight line, without regard to intervening structures or objects, from the nearest portion of the building *or structure* used as *a part of the premises where* a theater or show *is conducted* to the nearest *property line of the premises of a church or public or private elementary or secondary school, or to the nearest boundary of a district restricted to residential use by the Comprehensive General Zoning Ordinance of the City, or to the nearest boundary of a public park adjacent to a district restricted to residential use."*

SECTION 3. That a person who violates a provisions (sic) of this Ordinance is guilty of a separate offense for each day or portion of a day during which the violation is committed, continued, or permitted, and each offense is punishable by a fine not to exceed $200.

SECTION 4. That CHAPTER 46 of the Dallas City Code, as amended, shall remain in full force and effect, save and except as amended by this Ordinance.

SECTION 5. That this Ordinance shall take effect immediately from and after its passage and publication in accordance with the provisions of the Charter of the City of Dallas, and it is accordingly so ordained.

2. Plaintiff makes other contentions, but this is its chief contention and in view of the Court's disposition of this allegation, no other allegations need be considered.

ordinance in the Criminal Courts of the State of Texas. Many of these do involve employees of the Plaintiff. But not one has been shown to have been brought against the Plaintiff and the Court has no reason to believe that one has been brought against the Plaintiff.

██ It is apparent from the record before the Court that Plaintiff is paying the legal fees of its employees who are arrested for violating the ordinance in question and is also standing the costs of any appearance or appeal bonds posted by or on behalf of its employees in these cases.

The Court finds that this is sufficient injury to Plaintiff so as to give it standing to contest the constitutionality of this ordinance under *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) and Article III, Section 2, Clause 1 of the Constitution of the United States. The Plaintiff is being injured in fact by the actions of Defendants in enforcing the City's ordinance.

Though Plaintiff may be contractually bound [3] to pay its employees' legal fees, it is not the same as if there were outstanding prosecutions against Plaintiff.

██ In the present instance, this Court can grant relief to Plaintiff without interfering with the processes of the Courts of the State of Texas. That a judgment of this Court declaring the ordinance before the Court to be unconstitutional and for naught might or would have effect in the cases that the State of Texas is prosecuting against Plaintiff's employees and others is of no consequence great enough for this Court to dismiss this civil action on the ground of comity. It is hornbook law that a Plaintiff is entitled to have its federal claims heard in a federal forum as a general rule. Exceptions such as *Younger* are narrow and it is not up to this Court to expand such exceptions particularly when the Court sees no policy enunciated by the Supreme Court that would be served by this Court abstaining.

3. The record is silent on this point but as it would be more than illogical to say that its employees would stay on as employees and face multiple prosecutions as they have unless

The ordinance in question does not denominate itself to be a "zoning" ordinance, but that is in effect what it is. It restricts the use of certain parcels of land in the same or similar fashion that a zoning ordinance does. For our purposes, it makes little difference just how this ordinance is denominated as its effect on a particular parcel of land will be the same no matter how denominated.

██ The evidence presented to the Court shows, with little dispute, that Plaintiff was doing business on Ervay Street within the city limits of Dallas on the day and for a substantial period of time before the ordinance in question went into effect. The Parties agree that Plaintiff's establishment on Ervay Street is covered by the strictures of the ordinance. So the question squarely before the Court is whether the City and its agents, the Defendants, can enforce this ordinance against Plaintiff.

The answer to this question is no.

The Supreme Court of the State of Texas in its opinion in the case of *City of University Park v. Benners*, 485 S.W.2d 773 (1972), reh. den., appeal dismissed, 411 U.S. 901, 93 S.Ct. 1530, 36 L.Ed.2d 191, reh. den., 411 U.S. 977, 93 S.Ct. 2142, 36 L.Ed.2d 700, states clearly the law in cases of nonconforming uses of land. Of course, the views of the Supreme Court of Texas are not controlling as to federal claims but the opinion fairly states the law, particularly in the light of *Standard Oil Co. v. City of Tallahassee*, 183 F.2d 410 (5th Cir. 1950), cert. den., 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 647.

The Texas Supreme Court held at p. 778:

".  .  .  [M]unicipal zoning ordinances requiring the termination of nonconforming uses under reasonable conditions are within the scope of municipal police power; .  .  .."

It also stated at p. 777:

Plaintiff had undertaken to pay their legal expenses; these payments are more than gratuitous.

". . . [T]he prevailing view recognizes the reasonable use of what is termed the 'amortization' technique as a valid exercise of the police power."[4]

It is readily apparent that Ordinance 15269 does not contain a "Grandfather" clause that allows for amortization of Plaintiff's investment in its business on Ervay Street. But this does not end the inquiry.

The Texas Supreme Court in *University Park* did mention in passing on page 778, ". . . harmful . . . to public health, safety, morals or welfare." These considerations amount to the law of nuisance which that court was excluding from its consideration in that case.

In the present case, the Parties have stipulated:

"3. Offenses involving public lewdness, prostitution and homosexual conduct more frequently occur in theaters which regularly exhibit sexually explicit materials than in theaters which do not customarily exhibit sexually explicit materials."

This may well be one of the reasons or the whole reason why the Dallas City Council enacted Ordinance 15269. But, nowhere within it does it express any reasons for its enactment. So this Court is hard pressed to assign any particular reason for the enactment of this ordinance.

█ It is ancient law that public nuisances may be enjoined. But the Texas Courts have held that legislative bodies may only define a nuisance, whether or not a particular use constitutes a nuisance is a justiciable question.[5] Though the Dallas City Council may have found, if it did, that objectionable or illegal conduct may be more likely to occur at such places such as Plaintiff's establishment on Ervay Street, it cannot in effect close down Plaintiff's place of business without a prior judicial determination that there is a public nuisance.

Beyond this, there is the case of *Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159 (5th Cir., en banc, 1978).

█ Plaintiff's business is the showing of movies which *Universal Amusement* points out are presumptively protected by the First Amendment to the Constitution of the United States. The Fifth Circuit in that case ruled that the Texas Nuisance Laws, Vernon's Ann.Tex.Civ.St., arts. 4666, 4667, could not be constitutionally invoked by the State of Texas to close down movie theaters for a year that had been found to have shown an obscene movie. It held that to allow the State of Texas to do so would impermissibly allow the prior restraint of materials not found to be obscene.

From this ruling, we learn that it would be impermissible for the City to put restraints on Plaintiff's business because of the content of the films shown without the full panoply of procedures required by *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).[6]

The Supreme Court in the case of *Young v. American Mini-Theaters*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed. 310 (1976) said that it was permissible for Detroit to reasonably regulate businesses of the character of Plaintiff's in a reasonable manner. That ordinance also was a "1,000 foot" ordinance. But there were two differences from the present case that are significant. First, the Detroit Common Council made specific findings as to the effects of establishments as Plaintiffs and the necessity of the ordinance.[7] Second, that ordinance did not affect pre-existing businesses.[8] The Dallas City Council did not make findings and the ordinance did not exempt pre-existing establishments. These differences are critical, particularly in the light of Justice Pow-

---

4. In order to conserve space, the reasoning behind these rulings will be omitted. The reader is referred to the opinion of the Supreme Court of Texas in that case.

5. *City of Carthage v. Allums*, 398 S.W.2d 799 (Tyler, 1966), reh. den., at p. 804.

6. *Universal Amusement v. Vance*, supra, at p. 169.

7. 427 U.S. 50, at p. 54, n. 6, 96 S.Ct. 2440.

8. 427 U.S. 50, at p. 71, n. 35, 96 S.Ct. 2440.

ell's concurrence.[9] The Detroit Ordinance was carefully drawn and did not run afoul of the constitutional restraints on zoning as Ordinance 15269 does.

Based on the findings and conclusions made herein, a judgment will be entered declaring the ordinance and that portion of the Code of the City of Dallas unconstitutional and void.

The Court will not at this time enter an injunction based upon the declaration though the entry of injunction is supported by the record. As the Supreme Court has noted, both a declaratory judgment and an injunction usually have the same effect in practicality.[10]

Plaintiff's attorney is requested to prepare and submit appropriate order.

---

**9.** 427 U.S. 50, at p. 73, 96 S.Ct. 2440.

**10.** *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).