**AVALON CINEMA CORPORATION,**
Appellant,

v.

**Reed THOMPSON, Individually and in his official capacity as Mayor of North Little Rock, Arkansas, et al., Appellees.**

No. 81–1162.

United States Court of Appeals,
Eighth Circuit.

Submitted May 21, 1981.

Decided Aug. 31, 1981.

Rehearing and Rehearing En Banc Granted
Oct. 27, 1981.

See 667 F.2d 659.

---

John H. Weston, argued, Brown, Weston & Sarno, Beverly Hills, Cal., John Wesley Hall, Jr., P. A., Little Rock, Ark., for appellant.

Jim Hamilton, City Atty., argued, G. Spence Fricke, Asst. City Atty., North Little Rock, Ark., for appellees.

Before GIBSON, Senior Circuit Judge, ARNOLD, Circuit Judge, and McMANUS *, Chief District Judge.

McMANUS, Chief District Judge.

Avalon Cinema Corporation (Avalon) appeals from a judgment, 506 F.Supp. 526,[1] in this 42 U.S.C. § 1983 case upholding the constitutionality of a zoning ordinance enacted in November, 1980, by the City of North Little Rock, Arkansas (City) and denying its application for preliminary injunction. For reversal Avalon contends first that the zoning ordinance on its face violates the first and fourteenth amendments by restricting public access to a form of protected speech and second, that regardless of the facial constitutionality of the zoning ordinance, it violates the first amendment as applied to Avalon.

On September 30, 1980, Avalon obtained building permits from the City to construct a movie theater and bookstore at 1101 West Avalon in North Little Rock. On that same date it also received a privilege license to operate a movie theater at that location. Avalon thereafter made preparations to open and operate a commercial adult theater and bookstore for the exhibition and sale of sexually oriented films and publications. There were no adult movie theaters in the City at the time and the record

---

* Edward J. McManus, Chief District Judge, Northern District of Iowa, sitting by designation.

1. The Honorable Elsijane T. Roy, District Judge, United States District Court for the Eastern District of Arkansas.

indicates that none, aside from Avalon, was preparing to open. On November 19, 1980, Avalon acquired a privilege license to operate an adult bookstore at the above location.[2] On that same date, a special meeting of the North Little Rock City Council was called at which an emergency zoning ordinance (the ordinance or zoning ordinance) was enacted. Section 1 of the five-section ordinance provides:

> A person commits an offense if he operates or causes to be operated within one hundred yards of a church, public or private elementary or secondary school, or an area restricted to residential use by the Comprehensive Zoning Ordinance of the City, or a public park adjacent to residential areas, a moving picture show or moving picture theatre which exhibits, or any shop or store which offers for sale, a film that explicitly depicts:
>
> > (1) Contact between any part of the genitals of one person and the genitals, mouth, or anus of another person;
> >
> > (2) Contact between a person's mouth, anus, genitals and the mouth, anus, or genitals of an animal or fowl;
> >
> > (3) Manipulation of a person's genitals;
> >
> > (4) Defecation, or;
> >
> > (5) Urination.

Avalon is presently located within 100 yards of a residential area.

The trial court found that the challenged ordinance was a valid exercise of the City's police power and was designed to preserve the integrity of the neighborhoods and the quality of life in North Little Rock and was not designed to proscribe speech.

In upholding the constitutionality of the ordinance, the trial court relied primarily on *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). There, the United States Supreme Court upheld the constitutionality of two 1972 zoning ordinances that amended a Detroit, Michigan "Anti-Skid Row Ordinance" to provide that an adult movie theater may not be located within 1,000 feet of any two other "regulated uses"[3] or within 500 feet of a residential area. The ordinances were challenged on three grounds: (1) that they were so vague as to violate the due process clause of the fourteenth amendment; (2) that they were invalid on first amendment grounds as prior restraints on protected communication; and (3) that classifying theaters based on film content violates the equal protection clause of the fourteenth amendment.

The Court rejected the first challenge by stating that any vagueness in the language of the ordinances had not affected plaintiff-respondent. As to the third challenge, a section of the plurality opinion subscribed to by four justices stated that society had a lesser interest in protecting erotic expression than in protecting political expression. The plurality held that the state could legitimately use the content of the sexually explicit materials as the basis for placing them in a different classification from other motion pictures.

The second challenge, that the zoning ordinances were invalid under the first amendment as prior restraints on protected communication, is quite similar to the challenge made to the North Little Rock ordinance. The Court in *Young* stated:

> It is true ... that adult films may only be exhibited commercially in licensed theaters. But that is also true of all motion pictures. The city's general zoning laws require all motion picture theaters to satisfy certain locational as well as other requirements; we have no doubt that the municipality may control the location of theaters as well as the location of other commercial establishments, either by con-

---

**2.** While the City does have a distinct privilege license for "adult" bookstores in addition to the privilege license for bookstores generally, it does not have a similarly distinct privilege license for "adult" movie theaters in addition to the general license for movie theaters.

**3.** Under the Detroit ordinance, regulated uses include adult bookstores, establishments for the sale of beer and liquor for consumption on the premises, hotels, motels, public lodging houses, pawnshops, pool or billiard halls, secondhand stores, shoeshine parlors and taxi dance halls.

fining them to certain specified commercial zones or by requiring that they be dispersed throughout the city. The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances. 427 U.S. at 62, 96 S.Ct. at 2448.

The court concluded that the 1,000 foot restriction itself did not impermissibly restrain protected communication. In this section of the opinion subscribed to by five justices, the Court stated that the city can reasonably regulate the locations of adult movie theaters so long as it does not eliminate the protected communication altogether. Justice Powell amplified on this in his concurring opinion. As he saw it:

> ... the central concern of the First Amendment in this area is that there be a free flow from creator to audience of whatever message a film or a book might convey .... the central First Amendment concern remains the need to maintain free access of the public to the expression.
>
> In this case, there is no indication that the application of the Anti-Skid Row Ordinance to adult theaters has the effect of suppressing production of or, to any significant degree, restricting access to adult movies. The Nortown concededly will not be able to exhibit adult movies at its present location, and the ordinance limits the potential location of the proposed Pussy Cat. The constraints of the ordinance with respect to location may indeed create economic loss for some who are engaged in this business. But in this respect they are affected no differently from any other commercial enterprise that suffers economic detriment as a result of land-use regulation. The cases are legion that sustained zoning against claims of serious economic damage.

*Young, supra,* at 77–8, 96 S.Ct. at 2455–6 (Authorities omitted).

Similar reasoning prevailed in the present case. As the trial court stated:[4]

... [the ordinance] does not seek to prevent the showing of adult films in the City of North Little Rock, but merely to prohibit the establishment of theaters which would exhibit certain well-defined sexually explicit films in certain areas of that City.

■ Testimony here established that there is a commercial area in downtown North Little Rock consisting of approximately ten to twelve square city blocks where an adult theater could be located without violating the zoning ordinance in question.[5] In upholding the validity of the zoning ordinance, we emphasize that it does not eliminate adult movie fare from North Little Rock by making it impossible for an adult movie theater operator to comply with it as a practical matter. The ordinance simply regulates the locations in which adult theaters can operate, and in so doing, it leaves a sizeable swath of the commercial downtown North Little Rock available for such uses. It cannot be said therefore, that this ordinance "... has the effect of suppressing production of or, to any significant degree, restricting access to adult movies." *Young,* 427 U.S., at 77–8, 96 S.Ct. at 2455–6.

■ Avalon next contends that the ordinance as applied to it violates the first amendment because it deprives Avalon from exhibiting or selling sexually oriented films after receiving the necessary preliminary city approvals and after expending substantial sums in remodeling its building. The contention is well taken, as far as it goes. The ordinance as applied to Avalon deprives it of the ability to operate the adult movie theater at its present location, which is within 100 yards of a residential area. It does not deprive it from operating an adult theater in North Little Rock altogether.

While the Court is sympathetic to Avalon's argument regarding economic loss, we are reminded of Justice Powell's observa-

---

4. P. 527.

5. Trial transcript, pp. 8–9.

tion in *Young*: "The cases are legion that sustained zoning against claims of serious economic damage." 427 U.S., at 78, 96 S.Ct. at 2456. Moreover, Avalon's contention that the ordinance was enacted in the face of the adult theater's opening does not prove fatal. Avalon maintains that the ordinance was enacted hastily in order to prevent the exhibition and sale of sexually oriented films. The record allows another interpretation. While the zoning ordinance was enacted on November 19, 1980, Avalon did not intend to open until December 18, 1980.[6] More important, the ordinance did not effect an outright ban on the exhibition and sale of adult films, it reasonably regulated where they could be exhibited and sold within the city. Therefore, we find the ordinance is not unconstitutional as applied to Avalon.

In this regard we note that our decision does not contravene the recent decision of the United States Supreme Court in *Schad v. Borough of Mount Ephraim*, ── U.S. ──, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). There the Court reversed a New Jersey state court decision that a zoning ordinance which excluded live entertainment including nude dancing throughout the borough did not violate the first amendment. The Court found that the borough-wide ban on live entertainment prohibited a wide range of expression long held to be within the protection of the first and fourteenth amendments. In so doing, the Court stated:

> As an initial matter, this case is not controlled by *Young v. American Mini Theatres, Inc.*, supra, the decision relied upon by the Camden County Court. Although the Court there stated that a zoning ordinance is not invalid merely because it regulates activity protected under the First Amendment, it emphasized

that the challenged restriction on the location of adult movie theaters imposed a minimal burden on protected speech. 427 U.S., at 62 [96 S.Ct. at 2448]. The restriction did not affect the number of adult movie theaters that could operate in the city; it merely dispersed them. The Court did not imply that a municipality could ban all adult matters—much less all live entertainment or all nude dancing—from its commercial districts citywide.

── at ──, 101 S.Ct. at 2184 (Footnote omitted).

Just as the Court distinguished *Schad* from *Young* because the former affected an overall ban on live entertainment while the latter did not similarly ban all adult theaters, so can the case at hand be distinguished from *Schad*.

Affirmed.

ARNOLD, Circuit Judge, dissenting.

I would reverse the judgment of the District Court. I think this case is distinguishable from *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), on several grounds.

In *Young*, the ordinance in question was an amendment to an "Anti-Skid Row Ordinance" that had been adopted ten years earlier by the Detroit Common Council. The amendment added adult establishments[1] to a group of previously regulated uses that included cabarets, hotels or motels, bars, pawnshops, pool halls, public lodging houses, second-hand stores, shoeshine parlors, and taxi-dance halls. The Council had made specific findings about the possible adverse effects of a concentration of these uses in Detroit neighborhoods and determined that regulation of "adult uses" was warranted.[2] In doing so, the

---

6. Transcript of Hearing on Motion for Preliminary Injunction, pp. 5–6.

1. "Adult establishments" included adult book stores, adult movie theatres, topless dance halls, massage parlors, and other places of "adult" entertainment from which minors are excluded.

2. Section 66.000 of the Detroit Ordinance stated:

> In the development and execution of this Ordinance, it is recognized that there are some uses which, because of their very nature, are recognized as having serious objectionable operational characteristics, particularly when several of them are concentrated

Council relied considerably upon the opinions of urban planners and real-estate experts that concentrations of "adult" book stores and theatres would cause a decline in the "quality of life" in areas in which the concentrations occurred.

In the present case, the North Little Rock City Council enacted its zoning ordinance, which prohibited the showing of certain sexually explicit films within 100 yards of specified areas, only after learning of the imminent opening of the city's first "adult" movie theatre. Although the ordinance contains a brief statement of the City Council's reasons for enacting the legislation,[3] it is not so specific as the findings recited in the Detroit ordinance, and the Council's actions apparently were not based on any studies by social scientists nor on a demonstrated past history of "adult" theatres' causing neighborhood deterioration. Such demonstrated findings were a critical factor in the decision upholding the Detroit ordinances. See *Young v. American Mini Theatres, supra,* 427 U.S. at 55, 80, 96 S.Ct. at 2445, 2457 (Powell, J., concurring); see also *Ellwest Stereo Theaters, Inc. v. Byrd,* 472 F.Supp. 702 (N.D.Tex.1979); *E & B Enterprises v. City of University Park,* 449 F.Supp. 695 (N.D.Tex.1977).

It may be true that, as stated in *Genusa v. City of Peoria,* 619 F.2d 1203, 1211 (7th Cir. 1980), "a city need not await deterioration in order to act," and that "[a] legislative body is entitled to rely on the experience and findings of other legislative bodies as a basis for action." It seems logical,

however, to require *some* independent basis for a finding that the presence of a single theatre within 100 yards of a specific area of the city will have a deleterious effect upon the surrounding neighborhood.[4] The expert testimony relied upon by the Detroit Common Council in *Young* concerned specifically the harmful effects of a *concentration* of adult uses. Absent evidence suggesting neighborhood decline from the presence of a single adult theatre, the North Little Rock City Council did not "adequately justif[y] its substantial restriction of protected activity." *Schad v. Borough of Mount Ephraim,* —— U.S. ——, ——, 101 S.Ct. 2176, 2184, 68 L.Ed.2d 671 (1981) (footnote omitted).

Another significant difference between the Detroit ordinance and the North Little Rock ordinance is that the former did not affect existing "adult" establishments, but only the location of new ones. And as noted by the District Court in *Purple Onion, Inc. v. Jackson,* 511 F.Supp. 1207, 1224 (N.D.Ga.1981), "most adult zoning ordinances passed in the wake of *Young v. American Mini Theatres, Inc.,* have contained grandfather clauses permitting pre-existing, nonconforming uses as to all regulated adult businesses." Although the Avalon Cinema had not officially opened at the time the North Little Rock ordinance was passed, all preparatory work had been substantially completed. Given the fact that no other adult theatre existed in the city, the ordinance had the effect of virtually suppressing public access to sexually ori-

---

under certain circumstances thereby having a deleterious effect upon the adjacent areas. Special regulation of these uses is necessary to insure that these adverse effects will not contribute to the blighting or down grading of the surrounding neighborhood . . . .

**3.** Section 5 of the North Little Rock Ordinance, in part, states:

The City Council has found and determined that the prohibition of certain sexually explicit films in specific areas of the City is immediately necessary and desirable to insure and safeguard the proper development of young people and adults alike within the City of North Little Rock . . . .

This "finding" is little more than a statement that the City Council thinks a certain kind of

protected speech is morally objectionable. Such a purpose, however defensible on moral grounds, cannot, under the First Amendment, be the basis for restricting protected speech.

**4.** In his concurrence in *Young,* Justice Powell observed that "[m]ost of the ill effects [from adult establishments] . . . appear to result from clustering itself rather than the operational characteristics of individual theatres." *Young v. American Mini Theatres, supra,* 427 U.S. at 82 n.5, 96 S.Ct. at 2458 n.5. It should be recalled that the Detroit ordinance required dispersal and was aimed to prevent concentration. The North Little Rock ordinance, on the other hand, will apparently require concentration of "adult" theatres in a certain commercial area.

ented (but nonobscene) adult entertainment.

The Court today emphasizes that there is "a sizeable swath of the commercial downtown North Little Rock available for such [adult entertainment] uses." *Ante*, at 558. In testimony before the District Court, however, the city planning director admitted that he did not know whether there were any available or existing structures which might be utilized for the purpose desired by Avalon Cinema. Tr. 16. There may be few, if any, feasible locations in the commercial downtown area for an "adult" movie theatre.

There was no opinion of the Supreme Court covering all of the issues in *Young*. That is, although there were five votes to uphold the Detroit ordinance, the five Justices in the majority could not agree on a common rationale. Thus, if *Young* is to be used as authority to sustain this North Little Rock ordinance, the ordinance must satisfy not only the criteria of the plurality opinion in *Young*, but also those of Mr. Justice Powell's concurrence. In his concurring opinion, Justice Powell viewed *Young* as "presenting an example of innovative land-use regulation, implicating First Amendment concerns only incidentally and to a limited extent." *Young v. American Mini Theatres, Inc., supra*, 427 U.S. at 73, 96 S.Ct. at 2453. He then proceeded to apply the four-part test of *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), under which a governmental regulation may be justified, despite

its incidental impact upon First Amendment interests.[5] In finding that the Detroit ordinance met the third and fourth, as well as the first two, parts of the *O'Brien* test, Justice Powell stated:

> It is clear both from the chronology and from the facts that Detroit has not embarked on an effort to suppress free expression. *The ordinance was already in existence, and its purpose clearly set out, for a full decade before adult establishments were brought under it.* When this occurred, it is clear—indeed it is not seriously challenged—that the governmental interest prompting the inclusion in the ordinance of adult establishments was wholly unrelated to any suppression of free expression.

*Young v. American Mini Theatres, supra*, 427 U.S. at 80–81, 96 S.Ct. at 2457 (Powell, J., concurring) (footnote omitted) (emphasis mine).

Here, it is clear that the North Little Rock ordinance fails at least the third part of the *O'Brien* test. The City Council enacted the ordinance only after being informed of the impending opening of the Avalon Cinema adult theatre. One cannot ignore the fact that its passage was an "emergency" measure to prevent the exhibition and sale of sexually oriented films in North Little Rock.[6]

In sum, the North Little Rock ordinance is clearly a content-based regulation of protected speech. This is not an obscenity case, and the city does not claim that the

---

5. Under *O'Brien*, a governmental regulation is sufficiently justified if:
   (1) It is within the constitutional power of the government;
   (2) It furthers an important or substantial governmental interest,
   (3) *The governmental interest is unrelated to the suppression of free expression* ; and
   (4) The incidental restriction on alleged First Amendment freedom is no greater than essential to the furtherance of that interest.
   391 U.S. at 377, 88 S.Ct. at 1679 (emphasis mine).

6. The Court argues that the record allows another interpretation and emphasizes that while

the ordinance was enacted on November 19, 1980, the theatre was not planning to open until December 18, 1980. *Ante*, p. 559. An alderman testified, however, as follows:

> [Plaintiff's Attorney] Q Did you state to the Council as a whole that you hoped that [the] ordinance would keep the theater from opening?
> [Alderman Duke] A I certainly did.
> [Plaintiff's Attorney] Q Did you believe at the time that the theater was going to open that night [November 19, 1980]?
> [Alderman Duke] A The report was that it was going to open.

Tr. 8.

ordinance is limited to obscenity. The city's power to prosecute Avalon if it exhibits an obscene film is not questioned, either by the plaintiff or by me. This ordinance would reach a two-hour film, for example, in which one of the enumerated acts or parts of the body is depicted for a few seconds, no matter how much artistic merit or intellectual content the film as a whole might have.[7] Such an enactment cannot, under traditional First Amendment doctrine, be justified as a reasonable regulation of the time, place, and manner of lawful speech. The Supreme Court has quite recently repeated the rule that a "major criterion for a valid time, place, and manner restriction is that the restriction 'may not be based upon either the content or subject matter of the speech.'" *Heffron v. International Soc'y for Krishna Consciousness*, —— U.S. ——, ——, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981), quoting *Consolidated Edison Co. v. Public Serv. Comm'n.*, 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980).

The interests asserted by the city are not without force. There is such a thing as trash, and it is different from art. But under the First Amendment, it is neither for city councils, nor for judges, to draw the line between the two. I respectfully dissent.

---

**7.** By contrast, the ordinance upheld in *Young* restricted only material "distinguished or characterized by an emphasis" on certain specified activities or parts of the body. Under the Detroit ordinance, a film would be judged as a whole. The North Little Rock ordinance is, in this respect, more similar to the ordinance struck down in *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). *Compare Young*, 427 U.S. at 71–72 n.35, 96 S.Ct. at 2452–2453 n.35 (plurality opinion of Stevens, J.), 83–84 (Powell, J., concurring), *with Erznoznik*, 422 U.S. at 213–15, 95 S.Ct. at 2274–75.