**AVALON CINEMA CORPORATION,**
Appellant,

v.

**Reed W. THOMPSON, individually, and in his official capacity as Mayor of North Little Rock, Arkansas; William Younts, individually, and in his official capacity as Chief of Police of North Little Rock, Arkansas; James P. Hamilton, in his official capacity as City Attorney for North Little Rock, Arkansas, Appellees.**

No. 81–1162.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 9, 1981.

Decided Dec. 11, 1981.

John H. Weston, Brown, Weston & Sarno, Beverly Hills, Cal. (David M. Brown, G. Randall Garrou, Brown, Weston & Sarno, Beverly Hills, Cal., John Wesley Hall, Jr., Little Rock, Ark., on the brief), for appellant.

Jim Hamilton, City Atty., North Little Rock, Ark., for appellee.

Before LAY, Chief Judge, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY, McMILLIAN, and ARNOLD, Circuit Judges, en banc.

ARNOLD, Circuit Judge.

Avalon Cinema Corporation (Avalon) appeals from a judgment of the District Court denying its request for declaratory and injunctive relief and upholding the constitutionality of a zoning ordinance enacted by the City of North Little Rock, Arkansas. A panel of this Court, one judge dissenting, affirmed the judgment. 658 F.2d 555. Rehearing en banc was then granted, and the case was reargued before the full bench. Because the ordinance cannot be squared with the relevant precedents under the First Amendment, we now reverse.

I.

On September 30, 1980, Avalon obtained building permits to construct a movie theatre and bookstore at a single location in the City. The location was zoned as a commercial area. It also received, on that same date, a privilege license to operate a movie theatre. Avalon planned to exhibit at the theatre sexually-oriented films to consenting adults over eighteen years of age.[1] Substantial sums of money were apparently

spent remodelling and preparing the theatre and bookstore for its commercial opening. On November 19, 1980, Avalon secured a privilege license to operate an adult bookstore at the selected site.[2] That same day, the North Little Rock City Council convened a special meeting for the purpose of enacting an emergency zoning ordinance that prohibited, within one hundred yards of specified structures and areas in the City, the exhibition or sale of any film in which certain specified acts are depicted.[3] Avalon's theatre is located within one hundred yards of a residential area.

Avalon subsequently brought suit in the District Court challenging the constitutionality of the ordinance under the First and Fourteenth Amendments and seeking to enjoin its enforcement. The Court denied relief, holding that the ordinance was a "proper, constitutional means of defending the integrity of th[e] City's neighborhoods" and was within the guidelines of *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). *Avalon Cinema Corp. v. Thompson*, 506 F.Supp. 526, 528 (E.D.Ark.1981). On appeal, Avalon argues that the ordinance violates the Constitution by restricting public access to a form of protected speech and has not been shown to be necessary to achieve any compelling governmental interest. We agree and distinguish this case from *Young v. American Mini Theatres, supra,* on several grounds.

II.

In *Young,* the Supreme Court upheld as constitutional a Detroit zoning ordinance

---

1. There were no adult movie theaters in the City at the time, and none, other than Avalon, was preparing to open.

2. The City has a separate privilege license for "adult" bookstores in addition to the privilege license for bookstores generally. It does not have a separate privilege license for "adult" movie theatres in addition to the general license for movie theatres.

3. Section 1 of the ordinance provides:
   A person commits an offense if he operates or causes to be operated within one hundred yards of a church, public or private elementary or secondary school, or an area restricted to residential use by the Comprehensive Zoning Ordinance of the City, or a public park adjacent to residential areas, a moving picture show or moving picture theatre which exhibits, or any shop or store which offers for sale, a film that explicitly depicts:
   (1) Contact between any part of the genitals of one person and the genitals, mouth, or anus of another person;
   (2) Contact between a person's mouth, anus, or genitals and the mouth, anus, or genitals of an animal or fowl;
   (3) Manipulation of a person's genitals;
   (4) Defecation, or;
   (5) Urination.
   North Little Rock Ordinance No. 5169.

which provided that adult movie theatres could not locate within 1000 feet of any two other regulated uses. The ordinance was an amendment to an "Anti-Skid Row Ordinance" that had been adopted ten years earlier by the Detroit Common Council. The amendment added adult establishments[4] to a group of previously regulated uses that included cabarets, hotels or motels, bars, pawnshops, pool halls, public lodging houses, second-hand stores, shoeshine parlors, and taxi-dance halls. The Council had made specific findings about the possible adverse effects of a concentration of these uses in Detroit neighborhoods and determined that regulation of "adult uses" was warranted.[5] In doing so, the Council relied considerably upon the opinions of urban planners and real-estate experts that concentrations of "adult" bookstores and theatres would cause a decline in the "quality of life" in areas in which the concentrations occurred.

In the present case, the North Little Rock City Council enacted its zoning ordinance, which prohibited the showing of certain sexually explicit films within 100 yards of specified areas, only after learning of the imminent opening of the city's first "adult" movie theatre. Although the ordinance contains a brief statement of the City Council's reasons for enacting the legislation,[6] it is not so specific as the findings recited in the Detroit ordinance, and the Council's actions apparently were not based on any studies by social scientists, or on a demonstrated past history of "adult" theatres' causing neighborhood deterioration. Such demonstrated findings were a critical factor in the decision upholding the Detroit ordinances. See *Young v. American Mini Theatres, supra,* 427 U.S. at 55, 80, 96 S.Ct. at 2445, 2457 (Powell, J., concurring); see also *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94 (6th Cir. 1981); *Ellwest Stereo Theaters, Inc. v. Byrd,* 472 F.Supp. 702 (N.D.Tex.1979); *E & B Enterprises v. City of University Park,* 449 F.Supp. 695 (N.D. Tex.1977).

■ It may be true that, as stated in *Genusa v. City of Peoria,* 619 F.2d 1203, 1211 (7th Cir. 1980), "a city need not await deterioration in order to act," and that "[a] legislative body is entitled to rely on the experience and findings of other legislative bodies as a basis for action." It seems logical, however, to require *some* empirical basis for a finding that the presence of a single theatre within 100 yards of a specific area of the city will have a deleterious effect upon the surrounding neighborhood.[7] The expert testimony relied upon by the

---

**4.** "Adult establishments" included adult bookstores, adult movie theatres, topless dance halls, massage parlors, and other places of "adult" entertainment from which minors are excluded.

**5.** Section 66.000 of the Detroit Ordinance stated:

In the development and execution of this Ordinance, it is recognized that there are some uses which, because of their very nature, are recognized as having serious objectionable operational characteristics, particularly when several of them are concentrated under certain circumstances thereby having a deleterious effect upon the adjacent areas. Special regulation of these uses is necessary to insure that these adverse effects will not contribute to the blighting or down grading of the surrounding neighborhood . . . .

**6.** Section 5 of the North Little Rock Ordinance, in part, states:

The City Council has found and determined that the prohibition of certain sexually explicit films in specific areas of the City is immediately necessary and desirable to insure and safeguard the proper development of young people and adults alike within the City of North Little Rock . . . .

This "finding" is little more than a statement that the City Council thinks a certain kind of protected speech is morally objectionable. Such a purpose, however defensible on moral grounds, cannot, under the First Amendment, be the basis for restricting protected speech.

**7.** In his concurrence in *Young,* Justice Powell observed that "[m]ost of the ill effects [from adult establishments] . . . appear to result from clustering itself rather than the operational characteristics of individual theatres." *Young v. American Mini Theatres, supra,* 427 U.S. at 82 n.5, 96 S.Ct. at 2458 n.5. It should be recalled that the Detroit ordinance required dispersal and was aimed to prevent concentration. The North Little Rock ordinance, on the other hand, would apparently require concentration of "adult" theatres in a certain commercial area.

Detroit Common Council in *Young* concerned specifically the harmful effects of a *concentration* of adult uses. Absent evidence suggesting neighborhood decline from the presence of a single adult theatre, the North Little Rock City Council did not "adequately justif[y] its substantial restriction of protected activity." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (footnote omitted).

Another significant difference between the Detroit ordinance and the North Little Rock ordinance is that the former did not affect existing "adult" establishments, but only the location of new ones. And as noted by the District Court in *Purple Onion, Inc. v. Jackson*, 511 F.Supp. 1207, 1224 (N.D.Ga.1981), "most adult zoning ordinances passed in the wake of *Young v. American Mini Theatres, Inc.*, have contained grandfather clauses permitting preexisting, nonconforming uses as to all regulated adult businesses." Although the Avalon Cinema had not officially opened at the time the North Little Rock ordinance was passed, all preparatory work had been substantially completed. Given the fact that no other adult theatre existed in the city, the ordinance had the effect of virtually suppressing public access to sexually oriented (but nonobscene) adult entertainment.

There was no opinion of the Supreme Court covering all of the issues in *Young*. That is, although there were five votes to uphold the Detroit ordinance, the five Justices in the majority could not agree on a common rationale. Thus, if *Young* is used as authority to sustain this North Little Rock ordinance, the ordinance must satisfy not only the criteria of the plurality opinion in *Young*, but also those of Mr. Justice

Powell's concurrence. In his concurring opinion, Justice Powell viewed *Young* as "presenting an example of innovative land-use regulation, implicating First Amendment concerns only incidentally and to a limited extent." *Young v. American Mini Theatres, Inc., supra*, 427 U.S. at 73, 96 S.Ct. at 2453. He then proceeded to apply the four-part test of *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), under which a governmental regulation may be justified, despite its incidental impact upon First Amendment interests.[8] In finding that the Detroit ordinance met the third and fourth, as well as the first two, parts of the *O'Brien* test, Justice Powell stated:

> It is clear both from the chronology and from the facts that Detroit has not embarked on an effort to suppress free expression. *The ordinance was already in existence, and its purpose clearly set out, for a full decade before adult establishments were brought under it.* When this occurred, it is clear—indeed it is not seriously challenged—that the governmental interest prompting the inclusion in the ordinance of adult establishments was wholly unrelated to any suppression of free expression.

*Young v. American Mini Theatres, supra*, 427 U.S. at 80–81, 96 S.Ct. at 2457–2458 (Powell, J., concurring) (footnote omitted) (emphasis added).

Here, it is clear that the North Little Rock ordinance fails at least the third part of the *O'Brien* test. The City Council enacted the ordinance only after being informed of the impending opening of the Avalon Cinema adult theater. We cannot ignore the fact that its passage was an "emergency" measure to prevent the exhi-

---

**8.** Under *O'Brien*, a governmental regulation is sufficiently justified if:

    (1) It is within the constitutional power of the government;

    (2) It furthers an important or substantial governmental interest;

    (3) *The governmental interest is unrelated to the suppression of free expression* ; and

    (4) The incidental restriction on alleged First Amendment freedom is no greater than essential to the furtherance of that interest. 391 U.S. at 377, 88 S.Ct. at 1679 (emphasis added).

bition and sale of sexually oriented films in North Little Rock.[9]

In sum, the North Little Rock ordinance is clearly a content-based regulation of protected speech. This is not an obscenity case,[10] and the City does not claim that the ordinance is limited to obscenity. The City's power to prosecute Avalon if it exhibits an obscene film is not questioned, either by the plaintiff or by this Court. This ordinance would reach a two-hour film, for example, in which one of the enumerated acts or parts of the body is depicted for a few seconds, no matter how much artistic merit or intellectual content the film as a whole might have.[11] Such an enactment cannot, under traditional First Amendment doctrine, be justified as a reasonable regulation of the time, place, and manner of lawful speech. The Supreme Court has quite recently repeated the rule that a "major criterion for a valid time, place, and manner restriction is that the restriction 'may not be based upon either the content or subject matter of the speech.'" *Heffron v. International Soc'y for Krishna Consciousness*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), quoting *Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980).

The interests asserted by the city are not without force. There is such a thing as trash, and it is different from art. But under the First Amendment, a governmental body must bear a heavy burden of justification when it seeks to draw the line between the two. For the reasons we have given, the ordinance at issue fails to meet that burden. The judgment of the District Court is reversed, and the cause is remanded for a determination of appropriate equitable relief.

It is so ordered.

HEANEY, Circuit Judge, concurring in the result.

I concur in the result reached in the majority opinion. I do so only because the ordinance in question would reach films "in which one of the enumerated acts or parts of the body is depicted for a few seconds, no matter how much artistic merit or intellectual content the film as a whole might have." Op. 663. Were it not for this feature of the ordinance, I would be inclined to affirm the District Court.

9. The Court is aware that while the ordinance was enacted on November 19, 1980, the theatre was not planning to open until December 18, 1980. An alderman testified, however, as follows:

[Plaintiff's Attorney] Q Did you state to the Council as a whole that you hoped that [the] ordinance would keep the theater from opening?
[Alderman Duke] A I certainly did.
[Plaintiff's Attorney] Q Did you believe at the time that the theater was going to open that night [November 19, 1980]?
[Alderman Duke] A The report was that it was going to open.
Tr. 8.

10. The City has never contended that the movies to be shown by Avalon "are obscene or otherwise not within the First Amendment, and—as a majority of the Supreme Court has recently affirmed—sexually explicit but nonobscene materials, however distasteful, are entitled to no less protection than other forms of expression. See *Young v. American Mini The-*

*atres, supra*, 427 U.S. at 73, 96 S.Ct. at 2453 (Powell, J., concurring); *id.* at 84, 96 S.Ct. at 2459 (dissenting opinion of four Justices); *Hart v. Edmisten Book Stores*, [612 F.2d 821, 826–28 (4th Cir. 1979).]" *Fantasy Book Shop, Inc. v. City of Boston*, 652 F.2d 1115, 1126 (1st Cir. 1981).

11. By contrast, the ordinance upheld in *Young* restricted only material "distinguished or characterized by an emphasis" on certain specified activities or parts of the body. Under the Detroit ordinance, a film would be judged as a whole. The North Little Rock ordinance is, in this respect, more similar to the ordinance struck down in *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). Compare *Young*, 427 U.S. at 71–72 n.35, 96 S.Ct. at 2452–2453 n.35 (plurality opinion of Stevens, J.), 83–84 (Powell, J., concurring), *with Erznoznik*, 422 U.S. at 213–15, 95 S.Ct. at 2274–75.