**THAMES ENTERPRISES, INCORPO-
RATED, d/b/a Broadway Book
Emporium, Appellant,**

v.

**CITY OF ST. LOUIS and Martin
Walsh, Appellees.**

No. 87–1892.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1988.

Decided June 30, 1988.

Rehearing and Rehearing En Banc
Denied Aug. 19, 1988.

Lawrence R. Goldberg, St. Louis, Mo., for appellant.

Julian L. Bush, St. Louis, Mo., for appellees.

Before HEANEY and JOHN R. GIBSON, Circuit Judges, and HARPER,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Thames Enterprises, Incorporated (Thames) appeals from a judgment of the

---

* The HONORABLE ROY W. HARPER, Senior United States District Judge for the Eastern Dis-
trict of Missouri, sitting by designation.

district court[1] denying its request for declaratory and injunctive relief and upholding the constitutionality of a zoning ordinance (Ordinance No. 57454) regulating the location of certain adult businesses enacted by the City of St. Louis, Missouri. On appeal, Thames argues that the district court erred in granting the City's motion for summary judgment because the evidence produced by the City at the preliminary injunction hearing showed that the St. Louis Board of Aldermen failed to consider any relevant evidence or review any pertinent empirical data regarding the alleged concerns the ordinance was intended to redress before passing the ordinance. Thames alleges this proof is required by the Supreme Court's decision in *City of Renton v. Playtime Theatres*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and this court's decision in *Avalon Cinema Corp. v. Thompson*, 667 F.2d 659 (8th Cir.1981) (en banc). We affirm the judgment of the district court.

In 1976, the St. Louis Board of Aldermen adopted a zoning ordinance regulating the location of adult book stores, motion picture theaters, peep shows and massage parlors. The ordinance prohibits these businesses from: 1) locating within 1,000 feet of another such business except when neighbors waive the prohibition and the Community Development Commission certifies that the concentration will not cause "blight"; 2) locating within 500 feet of residentially zoned districts except when neighbors waive the prohibition; and 3) locating within 500 feet of a school or church. The stated purpose of the ordinance was to regulate the location of adult businesses in order to prevent neighborhood blight and decay associated with the concentration of these establishments in any one area.[2]

Thames sought to open an adult bookstore within 500 feet of a residentially zoned district. After the City refused to grant Thames a permit to do so, Thames filed suit seeking a temporary restraining order, preliminary and permanent injunctions, and declaratory judgment ruling that the ordinance violates the first and fourteenth amendments and is therefore unconstitutional.

At the preliminary injunction hearing, Judge Paul Simon, president of the Board of Aldermen at the time the ordinance was enacted, testified that he sponsored the bill which ultimately became Ordinance 57454. He testified that he patterned the bill after a Detroit ordinance upheld by the Supreme Court in *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed. 2d 310 (1976), and that he introduced the bill in conjunction with other efforts then underway to revitalize St. Louis neighborhoods. Judge Simon testified that at the time the Board of Aldermen considered the bill, he did not remember introducing any studies regarding the effects of adult entertainment businesses on neighborhoods. Nor did he recall the Board compiling or considering any other empirical data regarding these effects. Rather, he testified that to the best of his recollection, the Board relied on his opinion that the regulation of these businesses was necessary to the revitalization of city neighborhoods. Judge Simon testified that he based his opinion on his personal observations that these types of businesses tended to attract transients and were not conducive to a "stable, growing, vibrant neighborhood." Simon testified that after the bill's introduction the Board assigned it to the Community Development Agency (CDA), an

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

2. Section 914C.010 of the ordinance provides:
   In the enactment, execution and the enforcement of this ordinance, it is recognized that there are some uses which, due to the nature of their operation, are recognized as having serious objectionable operational characteristics, particularly when several of said uses are located in close proximity to each other thereby having a detrimental effect upon the surrounding area. The regulation of these uses is necessary to insure that the detrimental effects will not contribute to the blighting, down-grading or otherwise diminution of property values of the surrounding neighborhood. The primary purpose of these regulations is to prevent a concentration of these uses in any one area.

agency with expertise in urban planning. The CDA staff recommended adoption of the bill.[3] After presenting the bill to the Board of Aldermen's Zoning Committee, the bill was adopted by the full Board and approved by the Mayor.

After the hearing, the district court denied Thames' motion for a preliminary injunction, and later granted the City's motion for summary judgment. The district court noted that the St. Louis ordinance is a close parallel to zoning provisions enacted in a number of cities and towns throughout the United States. It concluded that the ordinance was not directed at the content of the products sold at affected establishments, but rather at the "secondary effects" of such businesses on the surrounding communities. It further concluded that both the sponsor of the bill which ultimately became City Ordinance 57454 and other civic leaders and elected officials were aware of the experiences of other cities with similar zoning laws and mindful of blight and decay which plagued St. Louis after World War II. Relying on *Renton v. Playtime Theatres*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the court held that the St. Louis ordinance was constitutional.

In reviewing a district court decision granting a motion for summary judgment, we apply the same standard as the trial court. *Mandel v. United States*, 719 F.2d 963, 965 (8th Cir.1983). Summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

In *Renton*, the Supreme Court upheld an ordinance similar to Ordinance 57454, finding that such limitations imposed upon an adult movie theatre were content-neutral, designed to serve a substantial governmental interest, and allowed for reasonable alternative avenues of communication. 106 S.Ct. at 930. There is no argument in this case that the ordinance is unconstitutional because it does not further a substantial governmental interest or because it has the effect of suppressing access to materials sold at these types of businesses. Rather, the sole argument is that the ordinance should be struck down because the Board of Aldermen adopted it without conducting any studies, collecting any empirical evidence or examining the experiences of any other cities regarding the effects of adult bookstores on neighborhoods. As a result, Thames maintains that the ordinance was unconstitutionally enacted under *Renton*.

Thames argues that Judge Simon's testimony is insufficient to meet the City's burden of proving that the City relied on evidence "reasonably believed to be relevant to the problem the City addresses when it passes an ordinance restricting the location of adult establishments." *Renton*, 106 S.Ct. at 931. Thames concedes that the City need not conduct new studies or produce independent evidence with regard to the impact of adult businesses in its city. *Id.* Thames further conceded at oral argument that the data reviewed by the City relevant to the problem the ordinance is intended to address need not be significant. Thames maintains only that there needs to be some empirical basis for a finding that the presence of an adult bookstore within 500 yards of a residentially zoned district will have deleterious effect upon the surrounding neighborhood and that Judge Simon's personal opinion is conclusory and speculative and insufficient to meet this burden.

We reject this argument. The evidence that the Board of Aldermen relied on in adopting the ordinance is sufficient to meet the burden imposed by *Renton*.[4] Judge Simon testified that based on his personal experience, adult establishments tended to attract transients and that their location in a neighborhood was not conducive to neighborhood revitalization. Judge Simon pat-

---

**3.** The staff recommendation was not adopted by the Commission, which declined to make a recommendation one way or another.

**4.** The City, undoubtedly because of the lack of a recorded legislative history, argues that under

*Renton* it has no burden to demonstrate the evidence before the council that supported passage of the ordinance. In view of the record before us, we need not reach this argument.

terned the ordinance after the Detroit ordinance upheld by the Supreme Court in *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Personal observations and judgments of a legislator, together with the results of research of other sources, can have substantial weight. While there is the danger that such observations can be speculative or conclusory, those of Judge Simon certainly fall within the category of experiences that can be properly considered by a legislative body in enacting an ordinance. The evidence as a whole, both the observations of Judge Simon and his knowledge of the decision in the *American Mini Theatres* case, qualify as the evidence recognized in *Renton*. The staff of the CDA also reviewed this ordinance and recommended its enactment. We conclude that the district court did not err in ruling as a matter of law that the City relied on evidence "reasonably believed to be relevant to the problems" it attempted to address when it passed Ordinance 57454.[5] *Renton*, 106 S.Ct. at 931. The ordinance was constitutionally enacted. We affirm the judgment of the district court.

---

5. Compare *Avalon Cinema Corp. v. Thompson*, 667 F.2d 659 (8th Cir.1981) (en banc), in which this court struck down an ordinance prohibiting the showing of sexually explicit films within 100 yards of specified areas. In *Thompson*, the North Little Rock City Council enacted the ordinance after learning of the imminent opening of the city's first "adult" movie theatre, without the benefit of any evidence concerning the possible effects a single adult theatre would have on surrounding neighborhoods. *Id.* at 661–62.