Botsford, J.
The plaintiff T&D Video, Inc. d/b/a Moonlight Reader (“T&D”) brings this action for declaratory and injunctive relief under 42 U.S.C. §1983 and G.L.c. 12, §§11H and 111 against the defendants City of Revere and certain of its officials (collectively referred to as “Revere”). At issue is the constitutionality of Sections 17.08.065 through 17.08.069 and 17.16.045 of the Revised Zoning Ordinance of Revere (the "Adult Entertainment Ordinances" or “Ordinances”) . T&D claims that Revere’s enforcement of the Ordinances has prevented it from opening and operating an adult video store in violation of its rights to freedom of speech and equal protection as guaranteed by the Constitutions of the United States and the Commonwealth of Massachusetts.
Presently before the court is T&D’s motion for a preliminary injunction to prohibit enforcement of the Adult Entertainment Ordinances with respect to T&D. Revere opposes the motion on its merits, and alternatively moves to consolidate the motion with a trial on the merits. For the following reasons, Revere’s motion to consolidate is denied, and T&D’s motion for a preliminary injunction is granted.
BACKGROUND
I take the facts from the parties’ submissions on the motion for preliminary relief. They are substantially undisputed. In September of 1993, T&D signed a lease and began construction and preparations to open an adult video store at 55 American Legion Highway, Revere, Massachusetts. On September 14, 1993, Thaddeus Drabkowski, president of T&D (“Drabkowski”), sought a business certificate from the representatives of Revere. He was told that he could not obtain such a permit unless he signed an affidavit stating that no adult videos or related materials would be sold at the store.[2] On the advice of counsel, Drabkowski refused to sign the affidavit, and he was ultimately issued the business certificate. Also on September 14, 1993, the building inspector of Revere, Joseph Ferruzzi (“Ferruzzi"), went to 55 American Legion Highway and caused a stop work order to issue because construction at the site was underway without a building permit.[3] Within several weeks, Ferruzzi’s office consented to the continuation of construction at the site, and work on the proposed video store was completed by the third week of October, 1993.
On September 16, 1993, two days after T&D sought a business certificate from Revere, the Mayor of Revere submitted a draft proposal for adult entertainment zoning restrictions to the City Council. (Affidavit of Frank Stringi, at para. 8.) On October 25, 1993, the proposed Adult Entertainment Ordinances were read at a Revere City Council meeting. The proposed ordinances were adopted by the City Council on November 8, 1993 and are attached hereto as APPENDIX A.
The Adult Entertainment Ordinances cover, within the same section, “adult entertainment establishments, adult bookstore[s], adult videostore[s], adult motion picture theater[s] and advertisement signs or devices.” Under the ordinances, the above uses “may be allowed by special permit" in the “I” district[4] of the city of Revere if certain minimum criteria are met: Subpart A restricts location of the above uses to further than 1000 feet from (a) one another, (b) schools, parks and churches and (c) residential uses or districts; Subpart B requires “a thirty foot wide landscaped strip” along the property line of any of the adult uses fronting a public or private way; Subpart C states that all such uses must occupy lots greater than 25,000 square feet but not more than 40,000 square feet"; Subpart D provides that no adult use may be allowed within a multi-use building; Subpart E states that all signs and adult uses must “not be located •within one hundred feet of a public or private way and must be set back a minimum of one hundred feet from all property lines”; Subpart F restricts adult use advertising signs and forbids “moving, flashing or animated lights, or visible moving or movable parts.”
No preamble or statement of purpose accompanies the Adult Entertainment Ordinances, and the legislative record is silent on the reason(s) for their passage or their intent and purpose. The City Council minutes contain nothing in the way of testimony as to the secondary effects on the community caused by such adult uses, and there is nothing in the record to suggest that the City Council was in possession of or relied on any studies suggesting that adult uses should be regulated to control secondary effects on the community.
On August 15, 1994, after a series of interactions between the parties over permitting issues, T&D ultimately received a certificate of acceptance and occupancy for retail use signed by Ferruzzi. The certificate includes the proviso that there shall be “no adult entertainment” on the premises. Thereafter, on September 1, 1994, Ferruzzi denied T&D’s application for a sign permit based on the 1000 foot restriction (sub-part A) and the multi-use building restriction (subpart D) of the Adult Entertainment Ordinances. The written *428 denial concludes with the following sentence: “Therefore, your sign permit application is denied and you are hereby notified your use is not allowed even by special permit at 55 American Legion Highway.”
T&D appealed Ferruzzi’s denial of the permit to the Zoning Board of Appeals of Revere, which held a hearing on October 26, 1994. On November 30, 1994, the Zoning Board of Appeals unanimously voted to affirm the denial of the permit.
DISCUSSION
“In evaluating a request for preliminary relief the court must first evaluate, in combination, the moving party’s claim of injury and its chance of success on the merits. If the failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the court must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. The raw amount of conceivable irreparable harm which each party may suffer does not matter; rather, the court must evaluate the risk of such harm in light of the party’s chance of success on the merits.” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). See Planned Parenthood League of Mass. v. Operation Rescue, 406 Mass. 701, 710 (1990)
1. T&D’s Chances of Success on the Merits.[5]
T&D claims that Revere’s enforcement of the Adult Entertainment Ordinances violates its rights under the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights. T&D argues that Revere’s ordinances are subject to strict scrutiny because they impinge on T&D’s First Amendment rights based on the content of its speech. See Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 68 and n. 7 (1981). T&D asserts further that where timing and sequence of events surrounding the enactment of an ordinance demonstrate a purposeful attempt to suppress expression, courts have seen fit to declare the ordinances unconstitutional. See, e.g., 754 Orange Ave., Inc. v. City of West Haven, 761 F.2d 105, 112-13 (2d Cir. 1985); Avalon Cinema Corp. v. Thompson, 667 F.2d 659,662-63 (8th Cir. 1981). See also Basiardanes v. City of Galveston, 682 F.2d 1203 (5th Cir. 1982). Alternatively,T&D asserts that the Adult Entertainment Ordinances do not pass constitutional muster as content-neutral time, place and manner restrictions.[6]
Revere’s position is that the Ordinances are not aimed at T&D or the expressive content of the videos T&D intends to rent and sell. Rather, Revere claims that the Adult Entertainment Ordinances were passed as content-neutral time, place and manner zoning restrictions, and should be considered under the standard for such zoning regulations set forth in the United States Supreme Court’s decision in City of Renton v. Playtime Theaters, Inc., 475 U.S. 41 (1986) (Renton).
The Adult Entertainment Ordinances, on their face, do not concern themselves with the specific content of the videos, motion pictures, books or other forms of expression that adult bookstores, video stores, theaters, etc. may offer to the public. Further, the Ordinances do not ban adult video stores or other adult entertainment uses; rather, they regulate the locations of such uses as well as certain physical aspects of the operations. Accordingly, Revere’s claim that the Ordinances must be examined from the perspective of whether they constitute reasonable time, place and manner regulations has some force. See Renton, 475 U.S. at 46-47. Accordingly, I turn to that issue.[7]
The Renton decision, drawing extensively from Young v. American Mini-Theaters, 427 U.S. 50 (1976), upheld a city ordinance prohibiting adult theaters from locating within 1,000 feet of any residential zone, single or multiple-family dwelling, church, park or school. Renton, 475 U.S. at 52-53. The Court found that the ordinance was not content-based but rather was narrowly tailored to serve the substantial government interest of controlling the adverse secondary effects of adult theaters on urban communities. Id. The Court held that the appropriate test under the circumstances was whether the city’s “ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication.” Id. at 50. Justice Rehnquist, writing for the majority, stated that the First Amendment requires that the city “refrain from effectively denying respondents a reasonable opportuniiy to open and operate an adult theater within the city .. .” Id. at 54.[8]
The Revere ordinances appear unconstitutionally restrictive even under the Renton analysis for content-neutral time, place and manner regulations. In Renton, the 1.000 foot restriction on the location of adult theaters was the only restriction under consideration by the court. In contrast, the “minimum criteria” of the Revere ordinances contain, in addition to the 1,000 foot restriction, a requirement for a thirty foot landscaped strip fronting on any private or public way, a lot size requirement of between 25,000 and 40,000 square feet, a prohibition against operating in a multi-use building, a 100 foot set-back requirement, and a ban on certain types of signs. Also, under Revere’s Ordinances all of the “minimum criteria” must be met within a very small area within the “I” district or industrial zone.[9] Even if Revere’s 1.000 foot location requirement meets the Renton standard of allowing alternative avenues of communication, T&D has shown it is likely that Revere’s “minimum criteria,” taken together, all but foreclose the possibility of opening and operating any of the enumerated adult uses in the city of Revere.[10]
Moreover, where the ordinance in Renton applied only to “adult motion picture theater[s],’’ the Revere ordinances treat all adult entertainment uses alike. The “minimum criteria” imposed in Revere apply equally to adult movie theaters, live adult entertain *429 ment venues, video and book stores. Thus, while certain of the “minimum criteria” may be justifiable for one type of adult entertainment use, they may be far harder to justify when applied to a different adult use. The lot size requirement, for example, could conceivably serve a legitimate governmental interest as applied to a live entertainment establishment or a movie theater. But I see no reason why an adult video store should be required to occupy a lot of more than 25,000 square feet and less than 40,000 square feet, when ordinary video stores are not subject to the same restriction. Similarly, the thirty foot landscaped strip requirement could, possibly, be intended to protect the public from unwittingly viewing the activities inside a live entertainment venue, but there does not seem to be a legitimate governmental interest in requiring the same for an adult video store. The multi-use building restriction too may protect children or others from the sounds or sights coming from inside an adult theater or entertainment venue, but it seems to serve no purpose when applied to a video store that contains nothing more than cassettes displayed on shelves or racks.[11] ■ [12]
It is clear that where a zoning ordinance impinges on protected speech, the city bears some burden of establishing that the ordinance serves a substantial governmental interest, such as regulating the secondary effects of the activity being abridged. Renton, 475 U.S. at 50. In Renton itself, the record showed that before any adult entertainment uses existed, the city studied the issue of zoning legislation in detail and made clear in the legislative record that secondary effects of adult movie theaters on the surrounding community was the focus of concern. Here, by way of contrast, Revere made no attempt to justify its Adult Entertainment Ordinances by reference to the secondary effects of sexually oriented businesses while the ordinances were under consideration by the City Council. The legislative record is barren. Neither did Revere seek to explain the intent and purpose of the ordinances within the context of the Ordinances themselves. Revere’s only effort at defining the purpose and intent of the Ordinances came during this litigation, well after enactment and enforcement of the laws.
“Clearly . . . ‘supplemental’ materials cannot sustain regulations where there is no evidence in the pre-enactment legislative record.” 11126 Baltimore Blvd. v. Prince George’s County, MD„ 886 F.2d 1415, 1425 (4th Cir. 1989) (emphasis in original). Such post-hoc attempts at constructing a legislative record are similarly not favored in Massachusetts. See Administrative Justice of the Housing Court Department v. Commissioner of Administration, 391 Mass. 198, 205 (1984); McKenney v. Commission on Judicial Conduct, 377 Mass. 790, 799-800 and n.9 (1979) (evidence of statements attributed to individual legislators as to their motives in considering legislation are not an appropriate source from which to discover the intent of the legislation).
In connection with the instant litigation, Revere offered the affidavit of Frank Stringi, the Director of Planning and Community Development for the City of Revere. Mr. Stringi states that he drafted the ordinance, and that “in Revere, we have found that the existence of adult uses contributes to neighborhood deterioration and an increase in crime, including prostitution.” (Affidavit of Frank Stringi, at para. 7.)[13] Under the rule above against post-hoc justifications of legislative intent, Mr. Stringi’s affidavit simply fails to add anything to Revere’s position.
In sum, I conclude that on the record presented, T&D has demonstrated a likelihood of success on the merits of its claim that Revere violated T&D’s rights protected by the First Amendment and art. 16 of the Declaration of Rights.
2. Risk of Irreparable Harm to the Parties and Balancing of the Equities.
It is often stated that in the First Amendment context, no harm other than the constitutional violation itself need be shown in order to demonstrate irreparable harm for the purposes of a preliminary injunction. See e.g., Elrod v. Burns, 427 U.S. 347, 373-74 (1976); Romero Feliciano v. Torres Gaztambide, 836 F.2d 1 (1st Cir. 1987); Citizens to End Animal Suffering v. Faneuil Hall, 745 F.Supp. 65, 76 (D. Mass. 1990): 11 C. Wright & A. Miller, Federal Practice and Procedure, §2948, at 440 (1973) (“When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary”). In Elrod the United States Supreme Court upheld a prefiminary injunction granted below to protect the First Amendment rights of employees threatened with termination based on their political views. The Court stated that “the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.” Id. at 373. See 754 Orange Ave., Inc. v. City of West Haven, supra, 761 F.2d at 110, 113 (irreparable harm shown by plaintiff on basis of enforcement of zoning ordinance that was likely to infringe plaintiffs First Amendment rights).
Since T&D has shown a likelihood of success on the merits on its claim that Revere violated, and continues to violate its First Amendment rights, I conclude that T&D has also shown it is likely to suffer irreparable harm and would continue to do so if its request for injunctive relief is denied. Because they are not free to engage in a form of protected speech, T&D suffers more than mere economic harm, but in any event, money damages would not be an adequate remedy because of the impossibility of measuring them.
On balance, any harm that Revere will suffer as a result of the granting of this preliminary injunction does not exceed that which T&D will suffer by being denied its constitutionally protected rights. T&D’s submissions indicate, without contradiction, that there are at least three video stores in Revere which offer adult videos for sale or rent, and that are located closer than 1000 feet *430 to residential areas. (Affidavit of James Michael Dunphy, Jr., attached to complaint as Exhibit B.) In light of these stores, Revere is not likely to suffer irreparable harm by the location of an additional store offering adult videos. Moreover, if Revere succeeds in demonstrating the constitutionality of the Adult Entertainment Ordinances at trial, the Ordinances will then be enforced, and T&D will be forced to close down its operations without any claim to “grandfathered” rights.[14]
ORDER
For the foregoing reasons, T&D’s motion for preliminary injunctive relief is ALLOWED, and Revere’s motion to consolidate the motion with a trial on the merits is DENIED. It is further ORDERED that the defendants are preliminarily enjoined from asserting, enforcing or relying on any provisions of the so-called “Adult Entertainment Ordinances,” Sections 17.08.065 through 17.08.069 and Section 17.16.045 of the Revere Revised Zoning Ordinance, to prevent, restrict or restrain the plaintiff from opening and operating its store or from selling non-obscene adult videos and related goods at the store.

The defendants have submitted nothing to dispute the conversation between Drabkowski and representatives of Revere concerning this affidavit.

In his affidavit, Ferruzzi contends that he received an anonymous report that construction was going forward at 55 American Legion Highway without a permit. T&D asserts that the proposed nature of its business was what caused Ferruzzi to issue the stop work order. Ferruzzi’s motivation for stopping construction at the site, if it is relevant, represents an issue for trial, and I draw no conclusions about the matter. What is clear is that work ceased on that day after Ferruzzi’s trip to the site.

The Ordinances do not expressly state that adult entertainment uses will not be permitted anywhere in Revere other than the “I” district, but there is no disagreement that Revere enforces its zoning ordinances in accordance with this limitation.

As a preliminary matter, I reject Revere’s contention that T&D Video has failed to satisfy conditions precedent to relief. Revere argues that T&D cannot challenge the validity of the zoning ordinance without first exhausting its administrative remedies by awaiting the outcome of the proceedings before the Revere Zoning Board of Appeals. However, on November 30, 1994 (two weeks after this action was filed), the Zoning Board of Appeals voted to affirm the denial of T&D Video’s permit application. Furthermore, it is well settled that there is no requirement of exhaustion of administrative remedies where, as here, the action is for a violation of civil rights under 42 U.S.C. §1983. Urbanizadora Versalles, Inc. v. Rios, 701 F.2d 993 (1st Cir. 1983), citing Patsy v. Board of Regents, 457 U.S. 496 (1982).

T&D further claims that enforcement of the Ordinances constitutes a violation of Federal and State equal protection safeguards, and finally that the Ordinances exceed Revere’s zoning powers in this area, as purportedly defined by G.L.c. 40A, §9A. Given my conclusions with respect to the freedom of expression claims, I do not reach at this stage of the case the question of whether Revere violated T&D’s constitutional right to equal protection. With respect to the statutory claim, I do not believe T&D has shown at this stage a likelihood of success on the merits.

In reviewing the Ordinances as time, place and manner regulations, I do not mean to suggest that T&D’s initial claim — that the Ordinances were enacted with a focus on T&D itself, and for the purpose of restraining T&D’s “speech” based on the content of its videos — is not meritorious. It is a long recognized rule of law that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment. City of Renton v. Playtime Theaters, Inc., 475 U.S. 41, 46-47 (1986), citing Carey v. Brown, 447 U.S. 455, 462-63, and n.7 (1980): Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95, 98-99 (1972). Cf. Commonwealth v. Sees, 374 Mass. 532, 536-38 (1978).
On the record before me, T&D has shown that the timing of Revere’s passage of the Adult Entertainment Ordinances is suspicious, insofar as the reasons for the Ordinances are concerned. Prior to T&D’s application for a business permit, Revere had no ordinance restricting the location or operation of such adult uses. Only two days passed between T&D’s application for the permit and the Mayor’s submission of a draft of the zoning amendments to the City Council. Moreover, in some respects, the contents of the ordinance appear focussed on T&D’s proposed operations. In particular, Revere’s ordinance forbids the operation of any of the enumerated adult uses in a multi-use building: T&D had leased a site in a multi-use building. In addition, the absence of any legislative history showing that Revere’s focus in enacting the Ordinances was indeed on serving a legitimate and substantial governmental interest, and not on suppressing certain forms of expression, further supports the view that content restriction rather than content-neutral time, manner and place regulation was the motivating factor in this case.

Revere argues that, in the wake of Renton, courts from around the country have upheld zoning regulations similar to the Ordinances. Revere cites the following authority: Lakeland Lounge Inc. v. Jackson, 973 F.2d 1255 (5th Cir. 1992); Thames Enterprises Inc. v. St Louis, 851 F.2d 199 (8th Cir. 1988); Function Junction, Inc. v. Daytona Beach, 705 F.Supp. 544 (M.D. Fla. 1987); City of National City v. Winer, 838 P.2d 223 (Cal. Sup.Ct. 1992); 7250 Corp. v. Board of County Commrs., 799 P.2d 917 (Colo. 1990); Las Vegas v. Nevada Industries, Inc., 105 Nev. 174, 772 P.2d 1275 (1989); and Books, Inc. v. Prince George’s County, 566 A.2d 792 (Md.App. 1989). None of these cases, however, contain the full array of restrictions present in the Revere Ordinances. Neither do any of the above cases contain any facts tending to suggest that the statute or ordinance at issue was passed as a direct response to the proposed operations of a particular adult entertainment use.

According to the zoning map provided by the defendants as an exhibit to the affidavit of Frank Stringi (“Stringi”), an adult use may locate in one of two separate areas within the “I” district. One of the areas appears on the map as a very narrow strip. The other area is larger, but hardly large enough to indicate that it allows for reasonable opportunities to open and operate adult uses, given the number of different restrictions in the Ordinances and the range of adult uses subject to their terms. Both areas marked on the zoning map are within several hundred feet of residential zones. Thus, much of the already limited area marked and described by Stringi as “industrial zones where adult uses may locate by special permit” appears to be unavailable because it is within 1,000 feet of a residential zone. See and compare Basiardanes v. City of Galveston, 682 F.2d 1203, 1213-15 (5th Cir. 1982) (significant restrictions on area where adult theaters could open cited as reason why city’s zoning ordinance could not be sustained as reasonable time, place and manner regulation).

Revere admits that the 100 foot setback requirement alone makes it virtually impossible to comply with the Ordinances. If the maximum lot size is 40,000 feet (say, 200 feet by 200 feet) and adult uses must be set back 100 feet from *431 each property line, no room remains in which to place any structure whatsoever. Revere nevertheless maintains that the 100 foot setback requirement was a “mistake” and it urges the court to consider striking that clause alone under the severability provision of the Ordinances. I have some difficulty with the “mistake” argument and with the suggestion in the Stringi affidavit that this particular provision was mysteriously added in the City Council’s drafting process (Stringi Aff., ¶10): the attachments to the Stringi affidavit suggest the provision was in the original proposal forwarded to the Revere City Council by the Mayor, and apparently drafted by Stringi himself. Nevertheless, even disregarding the 100 foot setback provision, for the reasons discussed in the text, the Revere Ordinances remain unreasonable time, place and manner restrictions.

Indeed, T&D maintains that it has planned to take numerous precautions in its operations to insulate the store from passers by and surrounding uses. In his affidavit, Drabkowski states that on December 7, 1993, he met with Mr. Cassiola, an assistant to the Mayor, and described to him the following precautions T&D would take:
(1) A sign will be posted outside the entrance of the store stating that a person must be twenty-one years old or older to enter the store;
(2) A service counter inside the store will be located near the entrance and staffed by an employee at all times. The employees will be instructed to monitor all patrons entering the establishment and to ask for identification from any individual who appears to be of an age below twenty-one years. Employees of the stores will be trained to detect various types of falsified age identification.
(3) The employees will be instructed to direct any individual believed to be less than twenly-one years of age or without adequate identification to leave the store.
(4) A sign will be posted outside the entrance of the store warning potential patrons that if they might be offended by materials of an adult nature they should not enter the store.
(5) The store will have window treatments designed so that the general public outside the store cannot see the merchandise or displays within the store.
(6) The exterior of the store, including any signs, will be designed in a way specifically chosen to be low-key and to avoid any aesthetic or other type of offense to the general public outside the store.

The Adult Entertainment Ordinances, by treating uniformly the several adult uses they mention, ignore real and constitutionally significant differences between a video store and other adult uses. Gascoe, Lid. v. Newtown Township, Bucks County, 699 F.Supp. 1092 (E.D. Penn. 1988), supports this view. In Gascoe, the court held that a township’s use of its zoning power to prohibit the plaintiffs distribution of adult films from its location in a shopping'center was an unconstitutional prior restraint. The court stated that such a prior restraint on video sales and rentals “implicates the privacy concerns of Stanley v. Georgia, 394 U.S. 557, (1969) ... to a greater extent than the exhibition of films in public theaters.” Gascoe, at 1097. The court explained that “the individual patron’s decision to rent or purchase an adult video for private viewing in the home certainly affects the community interest to a lesser degree than the public exhibition of adult films or live adult entertainment.” Id. at 1098.

While Stringi states he briefed some City Councillors about the proposed Ordinances, this hardly qualifies as evidence of the City Councillors deliberations or its reasons for enactment. Similarly, Stringi’s testimony before the Planning Board, which then sent a letter to the City Council recommending adoption of the Ordinances without giving any reasons, cannot be accepted as meaningful legislative histoiy in this case.

In Renton itself, a preliminary injunction in favor of the plaintiffs was granted at the outset of the case, but was later vacated after trial when the trial judge concluded that the plaintiff had failed to prove the unconstitutionality of the ordinance. Renton, 475 U.S. at 45. The ordinance was then enforced against the plaintiff.